# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VINCENT ROGGIO,

        *Plaintiff*,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

        *Defendant*.

Civil Action No. 09-1733 (TJK)

## MEMORANDUM OPINION AND ORDER

In this case, originally filed in 2009, Plaintiff Vincent Roggio asserts claims sounding in

contract and tort against the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as

Receiver for Washington Mutual Bank ("WaMu"). At the request of the parties, the Court

stayed the proceeding for many years. In March 2014, the Court ordered the case

administratively closed, but gave leave for either party to reopen it upon notice to the other. In

February 2018, Roggio, proceeding *pro se*, reopened it. Currently before the Court is Roggio's

"emergency" motion to stay the upcoming foreclosure sale of a property he owns. The Court

construes the motion as one seeking a preliminary injunction. Because the relief Roggio seeks is

barred by the Anti-Injunction Act, his motion is **DENIED**.[1]

---

[1] In considering Roggio's motion, the Court considered all relevant court filings including but
not limited to the following: Plaintiff's Complaint, ECF No. 1 ("Compl."); Plaintiff's Emergency
Motion to Stay the Imminent Sale of the Rumson Property, ECF No. 35 ("Motion" or "Mot.");
Defendant's Opposition to Plaintiff's Corrected Emergency Motion to Stay Imminent Sale of
Property, ECF No. 38 ("Opp."); Plaintiff's Motion in Support of Plaintiff's Application for an
Order to Show Cause Seeking a Preliminary Injunction, ECF No. 41; Plaintiff's Brief in Further
Support of Plaintiff's Motion for an Injunction, ECF No. 42; and Defendant's Response to
Plaintiff's Supplemental Submission, ECF No. 44.

## I.    Background

In 2006, WaMu initiated a pair of actions in New Jersey Chancery Court to foreclose on two of Roggio's properties.  Compl. ¶ 18; *see also* Opp. at 2.  As part of those proceedings, Roggio and WaMu entered into a settlement on or around January 25, 2007 (the "Settlement"), whereby Roggio agreed to waive his affirmative defenses and counterclaims if WaMu undertook actions to retract derogatory credit reporting about him that it had provided to credit rating bureaus.  Compl. ¶ 19; *see also* Opp. at 2.  On March 4, 2008, the New Jersey Chancery Court entered a final judgment against Roggio in one of the foreclosure actions.  Opp. at 3.  According to Roggio, WaMu took far too long (until November 2008) to correct his credit information and by then, his real estate business, which relied heavily on leverage and good credit, had been destroyed.  Compl. ¶¶ 8, 16, 20-22.  Roggio filed a motion in New Jersey Chancery Court to declare WaMu in breach of the Settlement, but his motion was denied.  Opp. at 2-3.  He then moved the court to reconsider, again to no avail.  *Id.* at 3.

On September 25, 2008, the FDIC was appointed Receiver of WaMu.  Compl. ¶ 23.  In September 2009, Roggio filed the instant case against the FDIC.  The complaint asserts a number of causes of action for WaMu's alleged failure to abide by the terms of the Settlement.  *Id.* ¶¶ 27-54.  For many years, the case was repeatedly stayed at the request of both parties.  On March 4, 2014, the Court entered a minute order directing the Clerk to administratively close the case, but noted that it would be "reinstated upon notice by either party."

In August 2017, JPMorgan Chase Bank, N.A., as successor to WaMu, filed an amended complaint in the second foreclosure action against Roggio in New Jersey Chancery Court, which relates to his property located at 140 Rumson Road in Rumson, New Jersey (the "Property").  Opp. at 3.  On February 16, 2018, it appears that the court granted final judgment against Roggio, over his objection.  *Id.*  Roggio subsequently filed a motion for reconsideration, which

was denied.  *Id*.  The Property was originally slated to be sold at a sheriff's sale on May 21, 2018, ECF No. 38-3, but according to Roggio, he received a two-week adjournment of the sale, which is now set to occur on or around June 4, 2018.

On March 22, 2018, Roggio filed a motion that requested, in relevant part, that the Court declare the New Jersey Chancery Court's February 16, 2018 judgment void, pursuant to Federal Rule of Civil Procedure 60(b)(4).  ECF No. 29.  The Court denied that motion on the ground that Rule 60(b)(4) does not permit a federal court to declare a state court judgment void.  ECF No. 39.

On April 24, 2018, Roggio filed the instant motion, which is styled as an "Emergen[cy] Motion to Stay the Imminent Sale of the Rumson Property on May 28, 2018 By a State Court Without Personal or Subject Matter Jurisdiction and in Violation of the Explicit and Implicit Language of Congress Under the Supremacy Clause of the United States."  *See* Mot.  Roggio's primary argument is similar to the one he made in his March 22 motion previously denied by the Court: he asserts that the New Jersey Chancery Court lost jurisdiction over both foreclosure actions against him in September 2008 when the FDIC became the Receiver of WaMu.  *See id*. at 4-9.  Specifically, Roggio argues that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 3331 *et seq.*, strips courts of jurisdiction over claims that have not gone through the FDIC's claims process.  Mot. at 6 (citing 12 U.S.C. § 1821(d)(13)(D)); *see also* Opp. at 5.  Roggio also raises a number of other arguments in his motion, including that (1) WaMu breached the Settlement Agreement, (2) he is entitled to a jury trial in this Court, and (3) the state court judgments are void because WaMu is no longer a legal entity.  Mot. at 9-17.  By way of relief, Roggio requests that this Court "stay the imminent sale" of the Property.  *Id*. at 17.

In response, the FDIC argues that FIRREA's jurisdiction only covers claims brought by borrowers *against* a failed financial institution (or its receiver), not *in rem* proceedings that were previously initiated *by* a financial institution against a borrower. Opp. at 5. The FDIC also argues that this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *Id.* at 5-7.

Although Roggio styled his request for relief as a "stay" of the upcoming sale of his property, Mot. at 17, as a practical matter he requests that this Court issue a preliminary injunction prohibiting the foreclosure sale from proceeding. *See Grynberg v. BP P.L.C.*, 643 F. Supp. 2d 1, 2 (D.D.C. 2009) ("Plaintiffs style this action as a 'stay pending appeal,' but there is nothing to stay—no order of this Court is challenged. Rather, this is, . . . a request for an . . . injunction."). Therefore, on May 11, 2018, the Court issued a minute order informing the parties that it construed Roggio's motion as a request for a preliminary injunction, setting a telephonic hearing date, and requesting that the parties be prepared to discuss, among other things, the applicability of the Anti-Injunction Act, 28 U.S.C. § 2283. On May 15, the Court held the hearing. The Court subsequently granted the parties leave to file short supplemental briefs on additional issues raised during the hearing. Minute Orders of May 15 and 17, 2018.

## II.    Analysis

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To warrant a preliminary injunction, the plaintiff must establish that: (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that the "balance of equities" tips in his favor; and (4) that "an injunction is in the public interest." *Id.* at 20. The plaintiff "bear[s] the burdens of production

and persuasion" when moving for a preliminary injunction. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).

As a threshold matter, the Court must evaluate whether it has the authority to grant a preliminary injunction to prevent the upcoming foreclosure sale. Although the FDIC did not raise this argument in its opposition, Opp., the Court concludes that the Anti-Injunction Act prohibits the Court from granting it.[2]

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "[T]he exceptions are narrow and are 'not [to] be enlarged by loose statutory construction.'" *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (second alteration in original) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast*, 398 U.S. at 297.

The Anti-Injunction Act prohibits the Court from enjoining the upcoming foreclosure sale. First, there is little question that the sale of the Property is a "proceeding[] in a State court" covered by the statute. *See* 28 U.S.C. § 2283. "As the Supreme Court noted in a case involving a prior version of the [Anti-Injunction Act], the term 'proceedings' 'is comprehensive' and 'includes all steps taken or which may be taken in the state court or by its officers from the

---

[2] Courts have considered *sua sponte* whether the Anti-Injunction Act applies. *See, e.g.*, *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004); *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988). Therefore, this Court does so as well.

institution to the close of final process. . . .  It applies alike to an action by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplementary or ancillary taken with a view to making the suit or judgment effective.'" *Mayo v. Wells Fargo Bank, N.A.*, No. 4:13-cv-163, 2014 WL 504719, at *2 (E.D. Va. Feb. 7, 2014) (second alteration in original) (quoting *Hill v. Martin*, 296 U.S. 393, 402-03 (1935) (Brandeis, J.)).  In other words, "[t]he Act's mandate extends not only to injunctions affecting pending proceedings, but also to injunctions against the execution or enforcement of state judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007).  As such, the Anti-Injunction Act "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atl. Coast*, 398 U.S. at 287.

In New Jersey, "[i]n a sale of mortgaged premises pursuant to [a] court's writ [of execution], a sheriff acts pursuant to statute and as an agent of the court." *Porreca v. LaFerriere*, 225 N.J. Super. 590, 593 (App. Div. 1988).  Here, the Property is being sold in New Jersey pursuant to a writ of execution.  ECF No. 38-3.  Because the sheriff acts as an agent of the court in such a sale, "[t]he sale qualifies as a judicial proceeding under the Anti-Injunction Act." *Clark v. U.S. Bank N.A.*, No. 03-cv-5452, 2004 WL 1380166, at *3 (E.D. Pa. June 18, 2004).

Indeed, many courts have held that under the Anti-Injunction Act, the term "proceedings" includes foreclosure sales scheduled to enforce state court judgments.  *See, e.g.*, *Lightfoot v. Bank of N.Y. Mellon*, No. 3:17-cv-1284, 2017 WL 4151171, at *3 (M.D. Pa. Sept. 19, 2017) ("Although the plaintiff attempts to argue that this case does not involve matters adjudicated . . . in the state court foreclosure proceedings, the plaintiff is attempting to stay the sheriff's sale of his home, which is the direct result of a judgment entered by the state court in his foreclosure proceedings."); *Armstrong v. First Franklin Fin. Corp.*, No. 1:05-cv-1379, 2005 WL 8155504, at

*1 (N.D. Ga. June 29, 2005) ("Plaintiff asks this court to enjoin execution of a Writ of Dispossession issued by a state court, which would result in interfere[nce] with state court proceedings." (collecting cases)), *report and recommendation adopted*, 2005 WL 8155508 (N.D. Ga. Aug. 29, 2005); *Millonzi v. Bank of Hillside*, 605 F. Supp. 140, 143 (N.D. Ill. 1985) ("Plaintiffs argue that the Anti-Injunction Act is not applicable because plaintiffs are merely asking the Court to enjoin the Bank of Hillside from obtaining a sheriff's deed from the Sheriff of Cook County. Plaintiffs' attempt to avoid application of the Anti-Injunction Act, however, has been rejected by several courts.").

Second, none of the three exceptions in the Anti-Injunction Act render it inapplicable to the circumstances here. The first exception permits the Court to enter an injunction "expressly authorized by [an] Act of Congress." 28 U.S.C. § 2283. But neither party has pointed to a statute through which Congress "expressly authorized" the injunction Roggio seeks. Although "FIRREA granted the FDIC, as receiver, broad powers to determine claims asserted against failed banks," *Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1060 (9th Cir. 2014) (internal quotation marks omitted), it does not "expressly authorize[]" a federal district court to enjoin a foreclosure proceeding that a failed financial institution had previously initiated against a debtor. Because there is no federal statute expressly authorizing the injunction sought by Roggio here, the first exception does not apply. *See Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 678 (11th Cir. 2014) (holding that the Anti-Injunction Act applies to foreclosure proceeding because "[t]he [a]ppellants have cited no Act of Congress that would allow for injunctive relief").

The second exception allows a federal court to enter an injunction "necessary in aid of its jurisdiction." 28 U.S.C. § 2283. "Cases often fall in the second exception to the Anti-Injunction

Act if both a federal and state court undertake parallel *in rem* proceedings that concern the same subject matter" or "if a federal court has already issued an injunction that future state court proceedings might disturb." *Naegele v. Albers*, 843 F. Supp. 2d 123, 128 (D.D.C. 2012). But neither of those circumstances apply here. Although the February 2018 foreclosure action that occurred in New Jersey state court was an *in rem* proceeding, the instant case is not such a proceeding. Indeed, Roggio's complaint asserts only claims for money damages, such as breach of contract, against WaMu. Compl. ¶¶ 27-54. Thus, the two lawsuits here are not parallel *in rem* proceedings that would trigger this exception. As the Fifth Circuit has persuasively explained, a complaint that "seeks monetary damages for wrongs allegedly committed by [a] [b]ank" is "an ordinary *in personam* action, and the mere fact that debts secured by real property are at issue in the dispute does not transform it into an *in rem* proceeding." *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990). Therefore, "the district court's *in personam* jurisdiction is not threatened by the possibility that the state court might allow [a bank] to foreclose on the properties at issue." *Id*. In addition, Roggio does not seek to protect any prior injunction issued by a federal court. Thus, the second exception does not apply. *See Arthur*, 569 F. App'x at 678.

The third and final exception to the Anti-Injunction Act authorizes the Court to enter an injunction "to protect or effectuate" its "judgments." 28 U.S.C. § 2283. But it, too, is inapplicable. This exception, termed the "relitigation exception," is a "strict and narrow" exception that is "designed to implement well-recognized concepts of claim and issue preclusion." *Smith v. Bayer Corp.*, 564 U.S. 299, 306-07 (2011) (citations and internal quotation marks omitted). Here, there is no federal court judgment to "protect or effectuate," so the exception does not apply. *See Arthur*, 569 F. App'x at 679 (holding that third exception did not

apply in foreclosure action because "[t]he [a]ppellants have not received and cannot point to a federal judgment that has been issued in their favor").

In sum, courts around the country have consistently concluded that the Anti-Injunction Act bars enjoining foreclosure proceedings in state court, notwithstanding the Act's three exceptions. *See, e.g.*, *Arthur*, 569 F. App'x at 679; *Phillips*, 894 F.2d at 132; *Mitchell v. U.S. Bank N.A.*, 293 F. Supp. 3d 209, 213 (D.D.C. 2018); *Lightfoot*, 2017 WL 4151171, at *3; *Colahar v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 603, 607 (D. Del. 2014); *Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 561-62 (E.D. Pa. 2014), *aff'd*, 636 F. App'x 115 (3d Cir. 2015); *Chester v. Bank of Am.*, No. 1:14-cv-27, 2014 WL 12323683, at *3 (N.D. Ga. Mar. 17, 2014); *Clark*, 2004 WL 1380166, at *3. As the Seventh Circuit put it, "a federal injunction precluding enforcement of a state court's [foreclosure] order is forbidden by the Anti-Injunction Act," and a plaintiff's contention "that the state court lacks jurisdiction and that there are other defects in the foreclosure proceeding . . . must be presented to and resolved by the state court." *Bozek v. Bank of Am., N.A.*, 682 F. App'x 507, 507-08 (7th Cir. 2017). The same is true here.[3]

---

[3] In light of the Court's conclusion that the Anti-Injunction Act prohibits the relief Roggio seeks, the Court need not address the FDIC's argument that the *Rooker-Feldman* doctrine also bars it. *See* Opp. at 5-7. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But because Roggio commenced this proceeding in 2009, nearly a decade before the judgment in the foreclosure action involving the Property occurred, it is not at all clear the *Rooker-Feldman* doctrine applies. *See Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005) ("If federal litigation is initiated before state proceedings have ended, then—even if the federal plaintiff expects to lose in state court and hopes to win in federal court—the litigation is parallel, and the *Rooker-Feldman* doctrine does not deprive the court of jurisdiction."). Notwithstanding the above authority, the FDIC argues that, for the purposes of applying the doctrine here, the "parallel" nature of the actions at issue should be measured from when Roggio filed the instant *motion*, as opposed to when he originally filed the case, because his motion seeks a different form of relief (enjoining an imminent foreclosure sale) than his

Because the Anti-Injunction Act prohibits the Court from granting the injunctive relief Roggio requests, the Court need not assess whether he has satisfied the traditional standard for a preliminary injunction.

### III.    Conclusion and Order

For all of the above reasons, Roggio's Motion, ECF No. 35, is **DENIED**.


**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 25, 2018

---

complaint (damages for common law claims).  Opp. at 5-7.  This argument has some appeal, but the FDIC cites no instance in which a court has applied *Rooker-Feldman* in this way.