# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VINCENT ROGGIO** | * | |
| Plaintiff | * | |
| v. | * | Case No. 09-cv-01733-TJK |
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Washington Mutual Bank | * * | |
| Defendant | * * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank (the "FDIC-Receiver"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(1),(6) and Local Rule 7(a), submits this memorandum of law in support of its motion for an order to dismiss the Amended Complaint filed by Plaintiff Vincent Roggio ("Roggio" or "plaintiff").

## INTRODUCTION

This matter arises out of Washington Mutual Bank's ("WaMu") purported failure to take certain actions in furtherance of a settlement agreement entered into between WaMu and Roggio in state mortgage foreclosure litigation in 2007. Because the factual and legal predicates of the instant Amended Complaint were adjudicated in New Jersey state court, re-litigation of these issues in this Court is barred by the doctrine of defensive collateral estoppel. This Court also lacks subject matter jurisdiction over Counts II-V and VIII of the Amended Complaint because Roggio failed to properly exhaust his administrative remedies against the FDIC-Receiver. Counts III-VIII should also be dismissed for failure to state a claim upon which relief can be

granted. Finally, Roggio's claim for attorneys' fees has no legal basis and also should be dismissed.

## Allegations of the Amended Complaint[1]

### I. The State Court Foreclosure Actions (June 2006-December 2008)

In June 2006, WaMu filed two mortgage foreclosure actions in the Superior Court of New Jersey Chancery Division, Monmouth County, against the plaintiff and his wife, Callie Roggio (collectively, the "Roggios"). (Am. Compl. ¶ 18, ECF No. 60.) In Docket No. F-10401-06[2], WaMu sought to foreclose on investment property owned by Roggio at 467 Navesink Road, Red Bank, New Jersey (the "Red Bank Foreclosure Action"), and in Docket No. F-010850-06, WaMu sought to foreclose on the Roggios' residence at 140 Rumson Road, Rumson, New Jersey (the "Rumson Foreclosure Action") (collectively, the "Foreclosure Actions"). (*Id.*; *see* accompanying Declaration of Jaime W. Luse ("Luse Decl."), which is incorporated herein by reference, at ¶ 4.) Roggio mortgaged his investment property and the Roggios had mortgaged their residence to WaMu in separate transactions in 2005, one for $3,000,000, and the other for $3,300,000. (Am. Compl. ¶ 9.)

Roggio filed an answer in the Red Bank Foreclosure Action and the Roggios filed an answer to the foreclosure complaint and asserted counterclaims against WaMu in the Rumson Foreclosure Action. (Id. ¶ 18.) The Roggios alleged that WaMu made multiple erroneous reports to one or more credit bureaus that negatively affected Roggio's credit score and thwarted the refinancing of their mortgages with favorable terms. (*Id.* ¶¶ 12-16.)

WaMu and Roggio reached a settlement agreement during a settlement conference in the New Jersey Superior Court on January 25, 2007. (*Id.* ¶ 19.) On April 30, 2007, the New Jersey

---

[1] For purposes of this Motion only, defendant accepts as true plaintiff's factual allegations.

[2] Callie Roggio was dismissed as a defendant in this action only on or about October 4, 2006.

Court entered an order in each of the Foreclosure Actions memorializing the terms of the settlement. (Luse Decl. ¶ 5.) Among the terms contained in the orders were provisions requiring Roggio to withdraw his answers and separate defenses in the Foreclosure Actions. (*Id.* ¶ 6.) Roggio opposed entry of the orders, claiming that they failed to accurately reflect the settlement agreement between the parties. (*Id.* ¶ 7.)

The Superior Court entered a final judgment against Roggio in the Red Bank Foreclosure Action on March 4, 2008, in the amount of $3,558.044.73. (*Id.* ¶ 8.) On August 21, 2008, the Roggios filed an amendment to their counterclaim in the Rumson Foreclosure Action (the "Amended Counterclaim"), in which they alleged that WaMu and the Roggios "are currently engaged in a dispute as to the agreed upon terms and the fulfillment of the obligations undertaken by the parties in the settlement. The resolution of said dispute is pending in the Chancery Division, Monmouth County." (Luse Decl. ¶ 9-10.) In their Amended Counterclaim, the Roggios further alleged that WaMu "breached the obligations it undertook in the settlement, the terms of obligation being a precondition for [WaMu] proceeding, *inter alia*, with the captioned foreclosure," and "[a]s a result of the said breach by [WaMu], the Roggios have sustained substantial damages and will continue to incur damages with the passage of time." (Ex. 4 to Luse Decl. at 26.) The Roggios sought a declaration that WaMu breached the settlement agreement reached on January 25, 2007, and an award of compensatory damages, punitive damages, attorneys' fees, and court costs. (Ex. 4 to Luse Decl. at 26-27.)

On December 9, 2008, Roggio filed a motion to declare WaMu in breach of settlement and to permit him to reinstate his counterclaims and defenses as well as to file additional counterclaims for damages. (Luse Decl. ¶ 12.) Roggio also filed a motion seeking to vacate the

settlement reached on January 25, 2007. (Luse Decl. ¶ 13.) While those motions were pending, Roggio filed the instant action in this Court.

## II.  The Instant Action (2008-2014)

On or about September 25, 2008, WaMu was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation was appointed its receiver pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). (Am. Compl. ¶ 23.) On or about January 14, 2009, Plaintiff submitted a proof of claim to the FDIC-Receiver (Am. Compl. ¶ 24), to which he attached the Amended Counterclaim in the Rumson Foreclosure Action, and sought $9,000,000 for WaMu's purported breach of the settlement agreement. (*See* Ex. 4 to Luse Decl. at 21-27.) The FDIC-Receiver denied the plaintiff's claim on or about July 13, 2009 (Am. Compl. ¶25) , and notified him of his right to file a lawsuit on his claim or continue any lawsuit commenced before the appointment of the FDIC-Receiver within sixty days from the date of the notice. (Ex. 5 to Luse Decl).)

On September 11, 2009, while his motions regarding WaMu's alleged breach of the settlement agreement were pending in state court, Roggio filed the instant action in this Court against the FDIC-Receiver. (ECF No. 1.) The issues raised in the Complaint were identical to those raised and pending at the time in the Foreclosure Actions. Each of plaintiff's causes of action arose from WaMu's purported breach of the settlement agreement reached on January 25, 2007. As he did in the Rumson Foreclosure Action, plaintiff here sought a declaration that WaMu breached the settlement agreement, damages for that breach, and attorneys' fees and costs. (Compl. Count VII.)

On January 4, 2010, the FDIC-Receiver moved to dismiss the complaint or in the alternative to stay the action pending resolution of the two parallel state court foreclosure

actions. (ECF No. 2.) Prior to the Court's ruling on the FDIC-Receiver's motion, Roggio and the FDIC-Receiver filed a consent motion to stay the federal court proceeding, noting that their request was made "in light of the parallel state court action pending in the Superior Court of New Jersey." (ECF No. 5.) As a result, this Court stayed this matter on January 19, 2010, for 120 days (ECF No. 6), and denied as moot the FDIC-Receiver's motion to dismiss or in the alternative to stay. At the expiration of the stay, Roggio and the FDIC-Receiver filed a second consent motion to stay the proceeding (ECF No. 7), and an additional eleven consent motions seeking to extend the stay while the Foreclosure Actions proceeded. (See ECF Nos. 8, 9, 10, 12, 14, 16, 18, 20, 21, 23, 25.) On March 4, 2014, the Court entered an Order directing the Clerk's Office to administratively close the matter pending further Order of the Court.

### III. The State Court Foreclosure Actions (2010-2018)

On June 2, 2010, the New Jersey Superior Court ruled upon Roggio's allegation that WaMu breached the settlement agreement (Luse Decl. ¶ 14.), opining that both Roggio and WaMu had breached it. Specifically, it held that "WaMu breached the agreement when it failed to remove all the negative reporting and inquiries in early 2007" and Roggio breached the agreement when he "failed to provide a copy of his credit report to WaMu in March 2007, when he was required to do so within forty-five (45) days of the January 25, 2007 settlement conference." (Ex. 6 to Luse Decl. at 22-23.) Thus, the court denied Roggio's motion to hold WaMu in breach of the settlement agreement, reinstate his counterclaims and defenses, file additional counterclaims and stay the foreclosure proceedings. (*Id.* at 23.)

On June 22, 2010, Roggio filed yet another motion requesting that WaMu be declared in breach of the settlement agreement and that his responsive pleadings be restored. (Luse Decl. ¶ 15.) He also asked that the 2008 judgment be vacated, and that a portion of the June 2, 2010

order be vacated. (*Id.*) On October 7, 2010, Roggio's motion was denied, and his answer to the complaint for foreclosure and counterclaim were stricken in the Rumson Foreclosure Action. (*Id.*)

In 2011, Roggio filed an appeal in the Red Bank Foreclosure Action. (Luse Decl. ¶ 16.) The Superior Court of New Jersey, Appellate Division, affirmed the lower court's judgment on August 23, 2012. (*Id.*)

On or about August 1, 2017, JPMorgan Chase, N.A. ("Chase"), as successor to WaMu, filed an amended complaint in the Rumson Foreclosure Action. (Luse Decl. ¶ 17.) The Superior Court entered a default judgment in favor of Chase and denied the Roggios' request to vacate that default on October 13, 2017. (Luse Decl. ¶ 18.) On February 16, 2018, the Superior Court entered an order denying the Roggios' objection to Chase's application for final judgment, and the application for final judgment was returned to the Office of Foreclosure for processing. (Luse Decl. ¶ 19.) The Superior Court entered a final judgment against the Roggios in the Rumson Foreclosure Action on February 26, 2018, in the amount of $6,169,701.07. (*Id.* ¶ 20.) The Roggios filed a motion for reconsideration, which the court denied on March 28, 2018. (*Id.* ¶ 21.) Following entry of the 2018 Judgment, Roggio filed a notice in this Court to return the case against the FDIC-Receiver to active status. (ECF No. 27.) On June 21, 2018, Roggio filed an Amended Complaint (ECF No. 60), which adds a cause of action alleging consumer fraud.

## STANDARD OF REVIEW

It is axiomatic that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion under Fed. R. Civ. P. 12(b)(6), "a court construes the complaint

liberally in the plaintiff's favor, accepting as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged." *BHC Interim Funding II, L.P. v. FDIC*, 851 F. Supp. 2d 131, 133 (D.D.C. 2012) (internal quotations omitted).

"The affirmative defense of collateral estoppel may . . . be raised in a Rule 12(b)(6) motion to dismiss when 'the defense can either be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice.'" *Felter v. Salazar*, 679 F. Supp. 2d 1, 4 (D.D.C. 2010) (quoting *Mitchell v. United States*, 2007 U.S. Dist. LEXIS 2860, at *2 n.2 (D.D.C. Jan. 16, 2007)). When deciding a Rule 12(b)(6) motion, "a court may take judicial notice of public records from other proceedings." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012).

Additionally, a court must dismiss a case pursuant to Fed. R. Civ. P. 12(b)(1) when it lacks subject matter jurisdiction. *Jahn v. FDIC*, 828 F. Supp. 2d 305, 310 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007). "Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "'Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1),' the factual allegations in the complaint 'will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Avery v. FDIC*, 113 F. Supp. 3d 116, 118-19 (D.D.C. 2015) (quoting *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted)).

**ARGUMENT**

**I.      Collateral Estoppel Bars All of Plaintiff's Claims Against the FDIC-Receiver.**

Collateral estoppel, or issue preclusion, bars the plaintiff's attempt to re-litigate in this lawsuit any of the issues that the state court resolved against him in the Foreclosure Actions. Collateral estoppel "bars 'successive litigation of an issue or law actually litigated and resolved' that was 'essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34 (D.C. Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Defensive collateral estoppel "allows defendants to 'prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.'" *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 72 (D.D.C. 2012) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)).

In order for collateral estoppel to bar the litigation of an issue in a subsequent case, three factors must be met:

> (1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Mead*, 839 F. Supp. 2d at 71 (quoting *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007)) (internal quotations omitted). All three factors are satisfied here.

First, the issues that the Amended Complaint seeks to re-litigate in this case—whether WaMu breached the settlement agreement and whether Roggio is entitled to damages as a result of that breach—were contested, briefed, and conclusively decided in the Foreclosure Actions. The New Jersey Superior Court concluded that both WaMu <u>and</u> Roggio breached the agreement, thereby precluding Roggio from seeking damages from WaMu for its breach. (*See* Luse Decl. ¶

14.) The Amended Complaint in this case attempts to re-litigate these same issues, this time with FDIC-Receiver as the defendant. And although the FDIC-Receiver was not a party in the state court action, it is entitled to invoke the collateral estoppel doctrine, as WaMu's successor, to prevent Roggio from re-litigating here the issues that were decided against him by the New Jersey state court. *See* § 1821(d)(2)(A) (the FDIC-Receiver "shall . . .by operation of law, succeed to (i) all rights, titles, powers, and privileges of the insured depository institution, . . .".) Defensive collateral estoppel is based upon the sameness of issues, not parties. *See, Mead v. Lindlaw*, 839 F.Supp. 2d 66, 72 (D.D.C.2012).Thus, the first requirement for defensive collateral estoppel is satisfied.

The second and third prerequisites also are satisfied. The state court proceedings in the Foreclosure Actions culminated in two final judgments, one of which was affirmed by the Superior Court of New Jersey, Appellate Division. The issues of whether WaMu breached the settlement agreement and whether Roggio was entitled to pursue a counterclaim for damages resulting from the breach were an integral part of the Foreclosure Actions and resulting judgments against Roggio. Furthermore, there is no unfairness in requiring Roggio to be bound by the New Jersey court's rulings because he agreed to stay this litigation so that the New Jersey court could decide these very issues. Roggio had a full and fair opportunity to litigate these issues in the Foreclosure Actions, and basic fairness does not require providing Roggio with another opportunity to litigate these issues. Indeed, the "basic unfairness" exception is narrowly construed in this Circuit and the party seeking to avoid preclusion must make a "compelling showing of unfairness." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015)(quoting *Otherson v. DOJ*, 711 F.2d 267, 277 (D.C. Cir. 1983)). *See also Willner v. Dimon*, 2018 U.S. Dist. LEXIS 13101 (D.D.C. Jan. 4, 2018). The *Willner* court, citing the D.C.

Circuit authority, held that "[t]ypically, this sort of showing is possible only where the parties in the first case lacked an incentive to litigate the issue sought to be precluded, or where there has been a significant change in controlling law since the first case." 2018 U.S. Dist. LEXIS 13101, at *16-17.

In sum, the crux of each of Roggio's causes of action is his contention that he was damaged by WaMu's alleged breach of the settlement agreement entered on January 25, 2007, an issue that was conclusively decided against him in the Foreclosure Actions. Because collateral estoppel precludes re-litigation of those issues, the Amended Complaint fails to state a claim for relief against the FDIC-Receiver and should be dismissed under Fed. R. Civ. P. 12(b)(6). *See Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 229 (D.D.C. 2012) (if plaintiff is precluded by collateral estoppel for complaining about WaMu's misconduct previously litigated in a state foreclosure action, then plaintiff cannot state a claim for causes of action in federal court deriving from the premise that the foreclosure action was wrongful).

## II. The Court Does Not Have Subject Matter Jurisdiction Over Counts II, III, IV, V, or VIII.

In 1989, Congress enacted FIRREA in response to the savings and loan crisis to enhance the system of liquidating failed financial institutions. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989). FIRREA states:

> "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over-- (i) any claim or action for payment from, or any action seeking determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, . . . or (ii) any claim relating to any act or omission of" the receiver.

12 U.S.C. § 1821(d)(13)(D). The language "except as otherwise provided in this subsection" refers to the administrative claims process set forth in section 1821(d)(3)-(13), which must be exhausted in order to establish jurisdiction to obtain a judicial determination by the Court.

As set forth in 12 U.S.C. § 1821(d)(13)(D), all claims must proceed through the claims process *before* being presented to a court, and a claimant's failure to file a claim before initiating litigation requires dismissal for lack of jurisdiction. *See Westberg v. FDIC*, 926 F. Supp. 2d 61, at * 70 (D.D.C. Feb. 26, 2013) (holding that "the requirement to exhaust administrative remedies applies to each claim a plaintiff may have"), *aff'd* 741 F.3d 1301 (D.C. Cir. 2014). When a complaint alleges legal theories different from those identified in the administrative proof of claim, the court does not have subject matter jurisdiction to consider those causes of action. *Jahn v. FDIC*, 828 F. Supp. 2d 305, 317 (D.D.C. 2011) (dismissing claims for civil conspiracy and conversion because only a claim for fraudulent transfer was submitted to the receiver). *See also McGothlin v. Resolution Trust Corp.*, 913 F. Supp. 15, 18-19 (D.D.C. 1996) (dismissing claims for negligence and breach of contract because only a claim for fraudulent inducement was submitted to the receiver), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997*).*

*Westberg* is particularly persuasive. The *Westberg* plaintiffs had a construction loan agreement with Silver State Bank. 926 F. Supp. 2d at 64. After the bank failed, and the FDIC was appointed as its Receiver, the FDIC as Receiver repudiated the unfunded commitment of the loan agreement and sold the funded portion of the loan to Multibank. *Id.* at 64-65. The plaintiffs filed a proof of claim only for repudiation damages but later sued the FDIC as Receiver and Multibank for both repudiation damages and a declaratory judgment that they no longer owed the amount they had actually borrowed under the loan. *Id.*

In addition to dismissing the damages claim, (*Id.* at 65, n. 2), the court dismissed the declaratory judgment claim. It held that the plaintiffs failed to exhaust their administrative remedies because they did not expressly seek in their proof of claim to be excused from repaying the loan. *Id.* at 70-71. Significantly, the court held that "[w]here a FIRREA complaint alleges entirely new legal theories that are different than those reflected in the administrative proof of claim, the Court is without subject matter jurisdiction to consider the new causes of action." *Id.* at 70 (quoting *BHC Interim Funding, L.P. v. FDIC*, 851 F. Supp. 2d 131, 138, n.4 (D.D.C. 2012) (edits and citations omitted) (dismissing declaratory judgment claim because plaintiff did not first present the claim to the receiver)). Other jurisdictions have similarly dismissed claims not set forth in proofs of claim.[3]

Likewise, Roggio here failed to present through the administrative claims process his breach of implied covenant of good faith and fair dealing, tort, and consumer fraud claims comprising Counts II-V and VIII of his Amended Complaint. Roggio's proof of claim seeks damages in the amount of $9,000,000, and refers to and attaches his counterclaim filed in the New Jersey state court proceedings against WaMu for breach of a settlement agreement reached on January 25, 2007. Roggio's proof of claim provides no further basis for his claim and completely fails to assert any legal theories that serve as grounds for Counts II-V and VIII of the Amended Complaint. (*See* Ex. 4 to Luse Decl.)

---

[3] *See, e.g., Firstier Bank v. FDIC*, 935 F. Supp. 2d 1109, 1122 (D. Col. 2013) (dismissing claims for fraud and declaratory judgment, which were not mentioned in proof of claim, for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1)); *Aljaf Assoc. Ltd. P'ship v. FDIC*, 879 F. Supp. 515, 517-518 (E.D. Pa. 1995) (dismissing fraud claim because it was not among the claims submitted to the receiver); *Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 674-76 (N.D. Ill. 1993) (dismissing claims for conversion and breach of contract because only a claim for breach of other agreements was submitted to the receiver); *Coleman v. FDIC*, 826 F. Supp. 31, 32 (D. Mass 1993) (dismissing claims in amended complaint that plaintiffs had not presented first through the FDIC administrative claims process); *Hibyan v. FDIC*, 812 F. Supp. 271, 275 (D. Me. 1993) (dismissing claims based on one contractual provision because only another contractual provision was presented to the receiver as the basis for a claim).

Thus, Roggio failed to put the FDIC-Receiver on notice of his theories of relief so that it could properly evaluate his proof of claim. Having failed to raise his breach of implied covenant of good faith and fair dealing, tort, and consumer fraud claims during the administrative claims process, Roggio cannot now have those claims decided here. Accordingly, Counts II, III, IV, V, and VIII of the Amended Complaint against the FDIC-Receiver are precluded under 12 U.S.C. § 1821(d)(13)(D) and this Court has no jurisdiction to grant the relief Roggio seeks in those causes of action.

**III.     The Amended Complaint Fails to State a Claim for Which Relief Can Be Granted.**

Several of the causes of action in Roggio's Amended Complaint fail for other reasons and should be dismissed. Roggio fails to state a claim for tortious interference with prospective economic advantage (Count III), intentional misrepresentation (Count IV), negligent misrepresentation (Count V), and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 (Count VIII). The bases for these Counts must be set forth in Roggio's Amended Complaint with the requisite specificity. Information submitted in other filings that purportedly substantiates these allegations does not meet pleading standards. *See Citizens for Responsibility & Ethics in Wash. v. Cheney,* 593 F. Supp. 2d 194, 210 (D.D.C. 2009) (In evaluating a motion to dismiss for failure to state a claim, "[t]he court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record"). Count VI, which purports to set forth a cause of action for "Determination of Plaintiff's Proof of Claim," fails because no such cause of action is recognized under federal or state law. Count VII also fails because a declaratory judgment claim is not cognizable as a separate cause of action. Finally, Roggio's request for attorney's fees lacks any legal basis.

### A. Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage (Count III).

Under New Jersey law[4], to state a claim for tortious interference with prospective economic advantage, a plaintiff must allege: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Fid. Eatontown, LLC v. Excellency Enter., LLC*, 2017 U.S. Dist. LEXIS 96368, at *15-16 (D. N.J. June 22, 2017) (dismissing tortious interference with prospective economic advantage claim for failure to adequately plead its elements). Economic damages "must be identified with a certain degree of specificity" and "vague allegation[s] that unknown, prospective customers may have been lost" are insufficient to survive dismissal for failure to state a claim. *N.J. Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 310 (2015) (dismissing tortious interference cause of action for failure to state a claim because plaintiff failed to allege a concrete injury).

Roggio has not met any of these requirements. First, he failed to plead facts that demonstrate a reasonable expectation of economic advantage to him. His averment that he "had an economic expectation in continuing to operate [the leveraging] business and in the continued ability to borrow large sums of money for business and personal needs" (Am. Compl. ¶ 35) falls

---

[4] District of Columbia choice-of-law rules, which blend a "governmental interests analysis" with a "most significant relationship" test, require this Court to apply New Jersey law to determine whether Roggio states a claim for tortious interference with prospective economic advantage, intentional misrepresentation, and negligent misrepresentation. *See Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 164 F. Supp. 3d 104, 108 (D.D.C. 2016); *DuBois v. Wash. Mut. Bank*, 492 Fed Appx. 117, 117-18 (D.C. Cir. 2012). New Jersey has a strong interest in having its laws resolve claims brought by New Jersey residents regarding conduct within New Jersey. Furthermore, New Jersey has the most significant relationship with the underlying dispute, as New Jersey is the place where Roggio resides, where the alleged injury occurred, and where Roggio's relationship with WaMu was centered. Moreover, New Jersey state courts have already ruled on the breach of the settlement agreement alleged here, and the state clearly has an interest in preserving its courts' rulings.

short of articulating a particular economic advantage that he lost as a result of WaMu's alleged interference. Roggio must plead an injury that is more concrete than unknown, unsolicited, or hypothetical lost business. Nor has he even alleged that WaMu's credit reporting actions were taken intentionally, let alone with malice. He failed to establish any causal connection, beyond a bald assertion, between WaMu's actions and his alleged loss of prospective gain. He has not demonstrated any actual damages. Accordingly, Count III should be dismissed with prejudice for failure to state a claim.

### B. Plaintiff Fails to State a Claim for Intentional Misrepresentation (Count IV).

To state a claim for intentional misrepresentation or fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 246, 926 A.2d 362 (App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997)). Additionally, pursuant to Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud[.]"

Roggio's fraud claim is insufficiently pled. The Amended Complaint's bare allegation of reliance in Count IV is insufficient because it fails to identify with specificity how Roggio relied on WaMu's representation to the court, how the reliance was reasonable, and how that reliance caused him any detriment. Roggio's threadbare, conclusory statements regarding reliance fall well short of the heightened pleading standard for fraud. Therefore, Count IV should be dismissed with prejudice.

## C. Plaintiff Fails to State a Claim for Negligent Misrepresentation (Count V).

Under New Jersey law, a plaintiff asserting a claim for negligent misrepresentation must allege: "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Facteon, Inc. v. Comp Care Partners, LLC*, 2014 U.S. Dist. LEXIS 165236, at *10 (D.N.J. Nov. 26, 2014) (internal quotations and citations omitted) (dismissing claim for negligent misrepresentation because plaintiff failed to establish a plausible contention of reasonable reliance). A negligent misrepresentation claim "must be predicated on a statement of present or past fact" and cannot stem from a statement as to a future intended act. *See BH 329 NB LLC v. CBRE, Inc.*, 2017 U.S. Dist. LEXIS 136325, at *13 (D.N.J. Aug. 24, 2017) (quoting *Pai v. DRX Urgent Care LLC*, 2014 U.S. Dist. LEXIS 27071, at *12 (D.N.J. Mar. 4, 2014)) (internal quotations omitted). An allegation that a party "subsequently broke its promise may or may not give rise to the inference that [the party] made the promise with no intent of keeping it, but that is an intentional misrepresentation, not a negligent one." *Id.*

Here, Count V is based on the allegation that WaMu negligently misrepresented its intention to remove derogatory remarks on Roggio's credit report. WaMu's statement constitutes a future promise, not a statement about past or present facts. WaMu, through its agent, could not have negligently stated an intention to remove derogatory remarks from Roggio's credit report; WaMu either had such intent or it did not, and thus it could not have been negligent in making its promise. The plaintiff's failure to allege an actionable statement is fatal to his claim for negligent misrepresentation and, consequently, Court V must be dismissed with prejudice.

### D. Plaintiff Fails to State a Claim for "Determination of Plaintiff's Proof of Claim" (Count VI).

Count VI is either barred by FIRREA because "[n]o court may review the Corporation's determination . . . to disallow a claim" (12 U.S.C. § 1821(d)(5)(E)), or it is duplicative of Count I if, by Count VI, Roggio seeks judicial determination of the proof of claim he submitted.

### E. Plaintiff Fails to State a Claim for Declaratory Judgment (Count VII).

Roggio also improperly asserts a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, that mimics his other substantive causes of action. A court has wide discretion over the use of a declaratory judgment in resolving controversies, and the Declaratory Judgment Act instructs that in a "case of actual controversy within its jurisdiction" a court "may declare the rights and other legal relations of any interest party seeking such declaration." 28 U.S.C. §2201(a). Generally, "[a] count for declaratory judgment 'is not cognizable as a separate cause of action, but is more properly included in the []prayer for relief.'" *Intelsat United States Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) (quoting *Walpin v. Corp. for Nat'l, & Cmty. Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010)) (dismissing count for declaratory judgment for failure to state a claim).

Roggio's requests for declaratory relief are duplicative of other counts in the Amended Complaint and seek no additional relief. Therefore, because Count VII merely reiterates the other counts of the Amended Complaint, it should be dismissed with prejudice.

### F. Plaintiff Fails to State a Claim for Consumer Fraud (Count VIII).

Roggio's claim under the New Jersey Consumer Fraud Act ("NJCFA") fails as well because he has not articulated an unlawful practice or an ascertainable loss. To succeed on a claim under the NJCFA, the plaintiff must demonstrate: (1) an unlawful practice by defendant, (2) an ascertainable loss to plaintiff, and (3) a causal relationship between the defendant's

unlawful conduct and the plaintiff's ascertainable loss. *Hoffman v. Nordic Naturals, Inc.*, 2014 U.S. Dist. LEXIS 53125, at *10 (D.N.J. April 17, 2014). NCJFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Id.* (dismissing NJCFA claim that was not pled with particularity).

Roggio states in conclusory fashion that "WaMu's actions as hereinabove set forth, constitute an unlawful practice . . . ." (Am. Compl. ¶ 57.) It is unclear to which of "WaMu's actions" Roggio is referring. Nor has Roggio alleged an ascertainable loss with the requisite particularity. The NJCFA requires a plaintiff to "demonstrate an 'ascertainable loss,' which is defined as a 'cognizable and calculable loss due to the alleged [NJCFA] violation.'" *Solo v. Bed Bath & Beyond, Inc.*, 2007 U.S. Dist. LEXIS, at *7-8 (D.N.J. April 26, 2007) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (2005)). An ascertainable loss may be demonstrated by "either out-of-pocket loss or a demonstration of loss in value" and is not "hypothetical or illusory." Thiedemann, 872 A.2d at 792. Here, Roggio generally states that WaMu's actions caused an ascertainable loss, but he stops short of articulating the actual loss. Thus, Roggio has failed to adequately plead a cause of action under the NJCFA and Count VIII should be dismissed with prejudice.

### G.     Plaintiff Cannot State a Claim for Attorneys' Fees.

Roggio's request for attorneys' fees has no legal basis. In the absence of a statutory or contractual right to attorneys' fees, the plaintiff's right to fees is governed by the American Rule, under which each side shall pay its own attorneys' fees. *See Dunlap v. FDIC*, ,2010 U.S. Dist. LEXIS 60489, at *14 (E.D. Cal. June 17, 2010) (finding that plaintiff was not entitled to an award of attorneys' fees because the agreement at issue contained no attorneys' fees clause and FIRREA contains no clause for an award of attorneys' fees); *Monrad v. FDIC*, 62 F.3d 1169,

1175 (9th Cir. 1994) (rejecting plaintiff's claim for attorneys' fees sought under A.R.S. § 12-341.01 and applying American rule to reverse lower court's award of fees); *Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994) (applying American rule to deny fee request of plaintiff seeking attorneys' fees under FIRREA). Thus, Roggio's request for attorneys' fees is unsupported by law and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the plaintiff's Amended Complaint should be dismissed against the FDIC-Receiver with prejudice and without leave to amend.

/s/
John B. Isbister (D.C. Bar No. 277418)
jisbister@tydingslaw.com
Jaime W. Luse (D.C. Bar No. 501944)
jluse@tydingslaw.com
Marissa K. Lilja (D.C. Bar No. 1024534)
mlilja@tydingslaw.com
Tydings & Rosenberg LLP
One East Pratt Street, Ste. 901
Baltimore, MD 21202
Tel.: 410.752.9700
Fax: 410.727.5460

*Attorneys for Defendant
Federal Deposit Insurance Corporation,
as Receiver for Washington Mutual Bank*

Of Counsel:
B. Amon James, Senior Counsel (D.C. Bar No. 433919)
bajames@fdic.gov
Susan Kantor Bank, Counsel (D.C. Bar No. 363769)
sbank@fdic.gov
Legal Division
Federal Deposit Insurance Corporation
3501 Fairfax Drive
Arlington, VA 22226
Tel.: 703. 562.2389
Fax: 703.562.2475

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July 2018, a copy of Defendant's Motion to Dismiss and supporting Memorandum of Law was served by first class mail, postage prepaid and by email on:

>Vincent Roggio
>140 Rumson Road
>Rumson, NJ 07760
>*Plaintiff*

>/s/
>Jaime W. Luse, D.C. Bar No. 501944