ORIGINAL                     ORIGINAL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VINCENT ROGGIO,

        Plaintiff,

v.                                    Civil No.: 09-CV-01733-TJK

FEDERAL DEPOSIT INSURANCE
CORPORATION

        Defendant.

---

## MOTION FOR THE COURT TO ENFORCE ITS ORIGINAL SUBJECT MATTER QUESTION JURISDICTION IN THIS CASE AND RECOGNIZE THE MULTIPLE DUE PROCESS VIOLATIONS OR IN THE ALTERNATIVE TO RECUSE ITSELF PURSUANT TO 28 U.S.C. 455(a)

---

Vincent Roggio, Pro Se
140 Rumson Road
Rumson, N. J.  07760
(732) 933-8333



RECEIVED
JAN - 4 2010
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................... 1

THE COURT'S MAY 25, 2018 ORDER IS PLAIN ERROR
BY WAY OF IGNORING THE COURT'S ORIGINAL
SUBJECT MATTER JURISDICTION ...................................................... 4

PLAINTIFF'S FILINGS OF FIRREA CLAIMS ON JANUARY 14, 2009
AND LAWSUIT ON SEPTEMBER 11, 2009 IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA WERE
POST-RECEIVERSHIP CLAIMS THAT CAN ONLY BE DECIDED
BY THE FEDERAL COURT NOT THE STATE COURT .................................. 6

PURSUANT TO 12 U.S.C.§ 1821(D)(8), PLAINTIFF WAS MANDATED
TO FILE BORROWER CLAIMS AGAINST THE FDIC BEFORE THE
U.S. DISTRICT COURT, NO SUBSEQUENT STATE DECISION CAN
DIMINISH THE STATUTE'S CLEAR INTENT ............................................ 7

THE COURT'S FINDING THAT THE BORROWER CLAIMS AGAINST WAMU
COULD BE DECIDED BY A STATE COURT WITHOUT JURISDICTION AND
IN A CASE WITH NO PROPER LEGAL ENTITY IS IN ERROR ...................... 9

THE COURT'S AUGUST 17, 2018 ORDER FINDING THAT PLAINTIFF'S
DUE PROCESS VIOLATION BY THE STATE COURT MUST BE DECIDED
BY THE NEW JERSEY APPELLATE DIVISION OR THE U.S. SUPREME COURT
INCORRECTLY CONFLATES THE COURT'S ORIGINAL SUBJECT MATTER
JURISDICTION WITH THE ANTI-INJUNCTION ACT ................................. 11

THE COURT'S DENIAL OF PLAINTIFF'S RIGHT TO FILEIN THIS COURT
WITHOUT A HEARING VIOLATES PLAINTIFF'S DUE PROCESS ................ 12

THE COURT WAS JUDICIALLY ESTOPPED FROM DECIDING PLAINTIFF'S
FIRREA CLAIMS ON A BASIS DIFFERENT THAN THAT DECIDED BY THE
STATE COURT ON FEBRUARY 2, 2018 OF THE SAME ISSUE ………………..……… 13

PLAINTIFF HAS A CONSTITUTIONALLY PROTECTED PROPERTY
INTEREST IN HIS HOME AND THE COURT'S REPEATED REFUSAL TO
ENFORCE ITS ORIGINAL JURISDICTION, BEFORE PLAINTIFFS BORROWER
CLAIMS WERE DECIDED, HAS DEPRIVED PLAINTIFF HIS OPPORTUNITY
TO BE HEARD AT A MEANINGFUL TIME AND IN A MEANINGFUL WAY ……… 20

THE COURT HAS IGNORED FIRREA AND RELIED INSTEAD ON THE
ANTI-INJUNCTION ACT TO ENABLE THE STATE TO SELL PLAINTIFF'S
HOME BEFORE THE BORROWER CLAIMS ARE PROPERLY DECIDED
AS PER THE MANDATED STATUTORY LAW …………………………………….. 22

THE COURT SHOULD TAKE JUDICIAL NOTICE THAT CHASE, IN A
STATE COURT FILING ON NOVEMBER 22, 2018, ACKNOWLEDGED
THAT THE NAVESINK DEED WAS TRANSFERRED TO CHASE IN AN
UNAUTHORIZED "ROGUE FILING" BY CHASE'S PRIOR LAW FIRM …………… 24

THE COURT'S CONTINUED REFUSAL TO ENFORCE ITS OWN
SUBJECT MATTER JURISDICTION AND PLAINTIFF'S DUE PROCESS
REQUIRES RECUSAL ……………………………………………………………..…… 29

CONCLUSION ……………………………………………………………….………….. 31

## PRELIMINARY STATEMENT

At the hearing on May 15, 2018 in this matter, Plaintiff made clear again that the Rumson and Navesink properties are at the substantive root of Plaintiff's borrower claims. This is demonstrated by the record in the following exchange (*see*, May 15, 2018 transcript, pgs. 9-10):

> THE COURT: Right. Okay. But your claims are not, you know – your claims have to do with the fact that you believe that Washington Mutual breached your settlement agreement. They are not, you know – those are separate claims from them – from Washington Mutual foreclosing on your house; isn't that fair to say?

> MR. ROGGIO: No, sir, they're not, because the claims require the credit to be fixed first before any foreclosure can take place. This is not a foreclosure case. This is a borrower-claims case. The settlement on – I'm sorry – January 25th, 2007, could not make that any clearer. There would be no foreclosure but for Washington Mutual never fixing the credit.

> THE COURT: Okay. The – let me just ask another question.

As the record then shows, the Court did not challenge or disagree with Plaintiff's position, but just turned its attention to a different topic, leaving Plaintiff to understand that Plaintiff's position was accepted by the Court. It was not until oral argument on July 18, 2018 that the Court's position was shown as differing from that of Plaintiff. On July 18th, the Court instead put forth that Plaintiff's claims, brought under the governing Statutes of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") by way of both borrower claims and due process claims involving the failed bank Washington Mutual ("WaMu") from 2006 up to and including 2012, had to be litigated in the New Jersey State Appellate Court, not in the Federal District Court, even though Federal Court is jurisdictionally mandated by the FIRREA Statutes. (*See*, July 18, 2018 transcript, p. 21, lines 12-24).

It is from this statement by the Court that Plaintiff has become aware that the Court seems to conflate the provisions of the Anti-Injunction Act, on which the Court relies, with the requirements mandated by the Court's original subject matter jurisdiction. The District Court's jurisdiction in this matter was put in place long before the State usurped the District Court's mandated authority and decided Plaintiff's borrower claims on June 2, 2010. It is the Statutory mandates of FIRREA that secured the Court's original subject natter jurisdiction the moment that the Federal Deposit Insurance Corporation ("FDIC") accepted Receivership of the failed bank WaMu on September 25, 2008. The Court's original jurisdiction was further secured when Plaintiff timely filed his borrower claims lawsuit on September 11, 2009 against the FDIC as Defendant, here, in one of only two Courts permissible as also mandated by the FIRREA Stautes.

The Court's position of July 18, 2018 was made known to Plaintiff only in the Court's August 17, 2018 Order, wherein the Court reiterated its position that Plaintiff's FIRREA Due Process claims must be decided by the State Appellate Division or the Supreme Court of the United States and not the District Court for the District of Columbia – even though Plaintiffs borrower claims were timely filed, as mandated, in this Court and are thus squarely and properly before this Court as a matter of law.

The Court's August 17, 2018 Order further stated that Plaintiff was denied the right to file in court without consent of the FDIC-Defendant, a ruling which was made without a hearing as Due Rrocess requires. Plaintiff has since been obliged to submit letters to the Court in an attempt to distinguish the issue of the Anti-Injunction Act versus the Court's original subject matter jurisdiction. To date, the Court has not responded to the letters or the Due Process issue. On September 7, 2018 Plaintiff forwarded a letter to the Court requesting a hearing (*see*, Sept. 7, 2018 letter with its attached Ex. I). The Court has not responded.

The Complaint at bar was filed on September 11, 2009. On November 19, 2018 Plaintiff's home in Rumson, New Jersey, the subject matter of the borrower claims pending before this Court, was sold at a Sheriff's sale. This sale was conducted by J.P. Morgan Chase ("Chase"), which is an entity that was <u>not</u> a named party to the Rumson foreclosure complaint, and on an FDIC asset that that is the subject of the borrower claims lawsuit before this Court. The asset sale took place by way of a State court judgment in the name of WaMu, a failed bank that has not been a legal entity since September 25, 2008, and for which only the FDIC is liable for the borrower claims. Furthermore, this sale was conducted by a State court that has not had personal or subject matter jurisdiction over this FDIC asset since the FDIC was appointed Receiver on September 25, 2008.

Chase, admittedly, was not and could not be a party as it bears no liability for any borrower claims against WaMu, and thus has no standing. The intended purpose of the FIRREA Statutes is to enable the FDIC to expeditiously determine the disposition of the failed bank's assets and liabilities. Chase has no standing to assume authority over these assets, the subject of these borrower claims, unless and until these claims are determined "under the laws of the United States." For the Court to now find that a state court should decide the borrower claims, more than nine years after the inception of this lawsuit appears to be legally and practically incomprehensible.

Plaintiff comes now to request that the Court enforce its original subject matter jurisdiction and, by that authority, stay any continued proceedings by the State to transfer the deed from the name of WaMu and into the name of Chase until these borrower claims proceedings are resolved.

Should the Court fail to exercise its jurisdictional authority, as mandated by the FIRREA Statutes governing this case, the Court will have furthered the Due Process violations. Also, the Court's imposed limitations on Plaintiff's access to the Court has thereby also limited the ability of these claims to be heard by the only Court with the proper judicial authority and the only party, the FDIC, with liability for the claims. The Court's refusal to abide by the clear and mandatory Statutory law violates its oath to uphold the laws of the United States and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Such violations would require the Court to recuse itself from any further proceedings in this matter as it brings into question the impartiality of the judge.

## THE COURT'S MAY 25, 2018 ORDER IS PLAIN ERROR BY WAY OF IGNORING THE COURT'S ORIGINAL SUBJECT MATTER JURISDICTION

The FIRREA Statute, 12 U.S.C. Section 1819(b)(2), unequivocally states:

"**all suits** of a civil nature at common law or in equity to which the Corporation **[FDIC] in any capacity**, is a party shall be **deemed to arise under the laws of the United States.**" (Emphasis added).

Here, Washington Mutual was a Federal bank, not a state bank, and when the FDIC-Receiver stepped into the shoes of WaMu on September 25, 2008, **all** of WaMu's assets and liabilities were *automatically* party to the FDIC Receivership in Federal Court. Under the law and as a practical matter, the FDIC *could not* purportedly transfer the WaMu loans to Chase *without being a party to that transaction.* Further, because the FDIC was, and had to be a party *before* it could transfer interest to anyone, the FDIC assets, including the Rumson and Navesink assets at bar, had to be decided – as a matter of law – by a Federal Court with original subject

matter jurisdiction over such actions before any other court could decide any of the issues regarding these assets. As per the Statutory mandates of FIRREA, "all suits... to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."

Under the FIRREA Statutory law, neither the FDIC nor the Plaintiff were required to remove the borrower claims to Federal court because they were already there. As stated in *Spring Garden Associates v. Resolution Trust Corp.*, 26 F.3d 412, 415 (3rd Circuit 1994):

> "Notwithstanding any other provision of law, any civil action, suit or proceeding to which the Corporation [FDIC] is a party **shall** be deemed to arise under the laws of the United States and the United States District Courts **shall have original jurisdiction** over such action, suit or proceeding."*Spring Garden Associates v. Resolution Trust Corp.*, 26 F.3d 412, 415 (3rd Circuit 1994) (Emphasis supplied)

Here, at Oral Argument on May 15, 2018, the Court agreed that it had original question jurisdiction and that such jurisdiction "never goes away." (See May 15, 2018 transcript, p. 17, lines 20-24) Yet, at Oral Argument on July 18, 2018 the Court repeatedly insisted that it was without "authority" to set aside a state court judgment (See transcript of July 18, 2018, page 14, lines 23-24) that had been rendered on the issue of borrower claims, an issue on which the State court was wholly without jurisdiction. Plaintiff argued here that the State "cannot taketh away" the right to have FIRREA borrower claims be decided in Federal court (See transcript of July 18, 2018, page 16, lines 6-9.)

Plaintiff has raised this foundational, mandatory and Statutory provision of the Court's original jurisdiction repeatedly during this litigation, yet neither the FDIC or the Court has addressed the issue. Plaintiff respectfully requests the Court to enforce its original jurisdiction.

**PLAINTIFF'S FILINGS OF FIRREA CLAIMS ON JANUARY 14, 2009 AND LAWSUIT ON SEPTEMBER 11, 2009 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA WERE POST-RECEIVERSHIP CLAIMS THAT CAN ONLY BE DECIDED BY THE FEDERAL COURT NOT THE STATE COURT**

After the FDIC accepted the WaMu Receivership on September 25, 2008, Plaintiff timely filed the borrower claims at bar on January 14, 2009. The claims were filed as mandated: within the only timeframe provided and within one of the only two places provided by FIRREA. **Exhibit A.** Plaintiff subsequently timely-filed a lawsuit against the FDIC as Defendant on September 11, 2009 as explicitly mandated by FIRREA. **Exhibit B.** Both of these filings were post-receivership filings.

In addressing post-receivership cases, the District Court for the District of Columbia wrote in *Poku v. FDIC*, 752 F. Supp 2d 23:

> In **post-receivership cases** such as this one, FIRREA authorizes filing in either the District of Columbia or the district court of the district where WAMU's principal place of business is located. See *Hudson United Bank v. Federal Deposit Ins. Corp.*, 43 F.3d 843, 849 (3rd Cir., 1994) (affirming district court's holding that, **in post-receivership cases, 12 U.S.C. § 1821(d)(6)(A) limits venue to the district court where the depository institution had its principal place of business or the District of Columbia**); *American Nat'l Ins. Co., v. Federal Deposit Ins. Co.*, No. G-09-44, 2009 WL 5943040, at *2, 2009 U.S. Dist. LEXIS 89465, at *6 (S.D.Tex. Sept. 9, 2009) (finding that the FDIC as a receiver for failed institutions has a "right to defend suits against it at specific locations," including the District of Columbia). (Emphasis supplied)

Under the plain language of the Statute, post-receivership cases are limited in terms of the venues where they may be litigated. Indeed, the Statute also provides for a mandatory and exclusive stay period on all courts so that the jurisdictional authority of the cases can be determined. Here, however, the Court relied exclusively on the State Court actions, knowingly

rendered during a Statutorily-mandated stay period, to deny Plaintiff's right to have his borrower claims decided by the United States District Court. This Court's abdication of its original subject matter jurisdiction was not only to a state court which had no jurisdiction to render a decision on the Plaintiff's borrower claims, and that also rendered its improper decision in violation of the "exclusive" and "mandatory" FIRREA stay period. Such impropriety violates not only the Statutory mandates governing this case but also the Supremacy Clause of the United States Constitution.

## PURSUANT TO 12 U.S.C.§ 1821(D)(8), PLAINTIFF WAS MANDATED TO FILE BORROWER CLAIMS AGAINST THE FDIC BEFORE THE UNITED STATES DISTRICT COURT, NO SUBSEQUENT STATE DECISION CAN DIMINISH THE STATUTE'S CLEAR INTENT

On January 14, 2009 counsel for Plaintiff filed as mandated, in this Court, against the FDIC-Receiver, the only party liabile for the borrower claims against the failed bank WaMu. The borrower claims in this matter amount to approximately $9,000,000.00 (nine million dollars) regarding the Rumson and Navesink properties. (*See,* Ex. A) On June 4, 2009 the FDIC sent a certified letter to Roggio requesting a six-month extension of the FDIC mandatory and exclusive STAY PERIOD to January 16, 2010. **Exhibit C.** The footnote to the FDIC's letter advised that "if you do not agree to the requested extension of time, by operation of law, your claim will be deemed disallowed and you will have 60 days from the original determination [July 20, 2009] to file a lawsuit. Counsel for Plaintiff declined the extension of time. On July 13, 2009, the FDIC sent another certified letter, which states in pertinent part (**Exhibit D**):

> Pursuant to 12 U.S.C. Section 1821 (d)(8), if you do not agree with this disallowance, **you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver),** in the **United States District (or Territorial) Court for the District** within which the failed institution's principal place of business was located or the United States District of Columbia within 60 days from the date of this notice.

IF YOU DO NOT FILE A LAWSUIT (or continue any lawsuit commenced before the appointment of the Receiver) BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821 (d)(6)(B). (Emphasis added)

Because Plaintiff had never commenced a lawsuit in the New Jersey courts against WaMu, he exercised his legal right to timely file suit in the District Court for the District of Columbia on September 11, 2009. (*See*, Ex. B) Plaintiff respectfully submits that it is vital for the Court to recognize that any other course of action by Plaintiff was statutorily barred.

Plaintiff's lawsuit clearly included the Rumson and Navesink properties, as acknowledged by the FDIC's Memorandum of Law filed on January 4, 2010. **Exhibit E**, p.2. The FDIC Memorandum also states (Ex. E, p.3):

> A copy of the Amended Counterclaim is attached as pages 21 through 27 to the plaintiff's Proof of Claim, a true and correct copy of which is attached as Exhibit 2 to the Luse Decl. In their Amended Counterclaim, the Roggios futher allege that **WaMu "breached the obligations it undertook in the settlement, the terms of obligation being a precondition for [WasMu] proceeding, inter alia, with the captioned foreclosure,"** and, "[a]s a result of the said breach by [WaMu], the Roggios have sustained substantial damages and will continue to incur damages with the passage of time." Luse Decl.

All of the actions, decisions and judgments that took place after September 11, 2009 by the New Jersey courts were rendered VOID by the mandatory language of the FIRREA STATUTES due to the State court's preemption of federal law.

The D.C. Appellate Court, in *Freeman v. FDIC*, 56 F.3d 1394, 1403 (D.C. Appeals Ct. 1996), a foreclosure case, wrote:

> **Under §1821(d)(6),** both the United States **District Court** for the District of Columbia and the district court for the district where the financial institution has its principal place of business have **jurisdiction to review de novo claims filed with and processed by, the FDIC under its administrative claims process.**

See *Rosa v. Resolution Trust Corp.*, 938 F. 2d 383, 391-92 (3rd Cir938 F. 2d 383, 391-92 (3rd Cir.), cert. denied, 502 U.S. 981, 112 S. Ct. 582, 226 L.Ed.2d 608 (1991). **Such an action must be filed in district court** within 60 days after the administrative claim is disallowed, or within 60 days after the expiration of the 180-day period allowed for processing the administrative claim whichever comes first. 12 U.S.C. § 1821(d)(6).

Here, Plaintiff followed the mandated directive, of the Statutory law, to file his borrower claims against the FDIC-Receiver of the failed bank WaMu before the Federal District Court of the District of Columbia and no subsequent State action can diminish that right.

## THE COURTS FINDING THAT THE BORROWER CLAIMS AGAINST WAMU COULD BE DECIDED BY A STATE COURT WITHOUT JURISDICTION AND IN A CASE WITH NO PROPER LEGAL ENTITY IS IN ERROR

As the New Jersey Appellate Division stated in *Options v. Lawson*, 287 N.J.Super. 209, 221 (App. Div. 1996) '[a] complaint by a non-legal entity should not be entertained." See also *Marchitto v. Central R.Co. of N.J.* 456, 466 (1952), overruled on other grounds by *Donnelly v. United Fruit Co.*, 40 N.J. 61 (1963); *LoPresti v. Galloway Tp. Middle School*, 381 N.J. Super. 314, 318 (Law Div. 2004). "The existence of a proper legal entity is not...a mere matter of form rather than substance. In any suit...the plaintiff must subject itself to orders enforceable against itself, as well as availing itself of favorable orders." *Options, supra*, 287 N.J.Super. at 221.

The governing FIRREA statute 12 U.S.C. Section 1819(a) (fourth) permits the FIDC to sue and be sued for the borrower claims. Yet here, the Court in its Order of May 25, 2018 wrote:

> In August 2017 J.P.Morgan Chase Bank, N.A., as successor to WaMu, filed an amended complaint in the second foreclosure action against Roggio in New Jersey Chancery Court which relates to his property located at 140 Rumson Road in Rumson, New Jersey, *id.* at 2.

In fact, Chase never amended the Navesink ór Rumson foreclosure complaints in state court to make Chase the successor in interest, and Chase never filed a motion to make Chase a party to either foreclosure complaint or a transferee, as shown plainly by the record. Chase also, as per the Purchase and Assumption Agreement ("PAA") with the FDIC, knew it has no liability for borrower claims so therefore knew that it had no standing to be a Successor in Interest. Chase also could not be sued because it was not a named party to the State case, and not a proper legal entity in the State case. *See, Covington v. J.P.Morgan Chase,* 62 F. Supp. 3d 47 (D.C. 2014) (The Agreement thus leaves the FDIC as the responsible party for borrower claims.)

Chase, in its Brief on direct appeal in the state case filed on September 12, 2011, which is twenty-eight months after Plaintiff filed the borrower claims in this Court, Chase wrote:

> "Because any claim Appellant [Roggio] may now have arises out of WaMu's breach of the settlement agreement prior to September 25, 2008, those purported claims are "Borrower Claims" of the kind described in the preceding quoted paragraph 2.5 of the Agreement. As such, the FDIC-Receiver is obligated to defend such claims be3cuase Chase did not assume that liability. Accordingly, Appellant's only course of action for the alleged breach is a suit against the FDIC, which he has already filed and is pursuing." **(Exhibit F)**.

Here, Chase unequivocally acknowledges Plaintiff's active borrower claims case against the FDIC, the FDIC's role as a legitimate and proper party, and Chase's own admitted limitations as a party. However, Chase never named itself as "Successor in Interest in any of the State cases. (*Infra,* page 21) The New Jersey Appellate Division affirmed that Chase could not be sued because the FDIC was never a party to either foreclosure complaint and Chase had no liabilities for borrow claims.

On May 25, 2018 the Court also wrote:

> Although the February 2018 (SIC 2017) foreclosure action that occurred in New Jersey State Court was an *in rem* proceeding, the instant case is not such a proceeding. Indeed, Roggio's complaint asserts only claims for money charges, such as breach of contract against WaMu. *Id.* at 8.

As the record shows, however, the majority of Plaintiffs claims involve *in rem* issues. **Exhibit G** (pgs. 10-17 and 24-28 of Plaintiffs Opposition to the Defendant's Motion to Dismiss Amended Complaint filed August 17, 2018).

<u>**THE COURT'S AUGUST 17, 2018 ORDER FINDING THAT PLAINTIFF'S DUE PROCESS VIOLATION BY THE STATE COURT MUST BE DECIDED BY THE NEW JERSEY APPELLATE DIVISION OR THE U.S. SUPREME COURT INCORRECTLY CONFLATES THE COURT'S ORIGINAL SUBJECT MATTER JURISDICTION WITH THE ANTI-INJUNCTION ACT**</u>

With all due respect, the Court's application of the Anti-Injunction Act to the facts in this case is clear error. A Federal Court's original subject matter question jurisdiction satisfies the first two prongs of the exception to the Act.

The first exception is that the FIRREA Statute is expressly authorized by Congress to prevent any court to have jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of any depository institution for whom the FDIC has been appointed receiver." 12 U.S.C. Section 1821 (d)(13)(D). Here, the FDIC was appointed receiver to *all* of WaMu's assets including the Rumson and Navesink loans as of September 25, 2008. The United States Congress expressly authorized, as of that date, <u>only</u> the FDIC to have jurisdiction over the WaMu assets.

The second exception allows a federal court to issue an injunction "in aid of its jurisdiction." Here the Court had original subject matter jurisdiction on September 25, 2008 over both the Navesink and Rumson loans, and again on September 11, 2009, when Plaintiff filed his borrower claims against the FDIC, as mandated by the FIRREA Statute, in the District Court for the District of Columbia. Such jurisdiction is aided by this Court preventing subsequent state decisions to infringe upon this Court's Statutory right to decide the issues "before any other court," as per Blacks Law Dictionary definition of Original Jurisdiction.

The FIRREA Statutes, in an effort to be clear and thorough in its mandates, provides its own Anti-Injunction Provision. S*ee*, *Volges v. Resolution Trust*, 32 F.3d 50 (2nd Cir. 1994). The alternative Anti-Injunction Act relied on by the Court does not supersede the Federal Court's *original* jurisdiction as it pertains to FIRREA. To do so is in violation of the Supremacy Clause of the United States Constitution.

## THE COURT'S DENIAL OF PLAINTIFF'S RIGHT TO FILE IN THIS COURT WITHOUT A HEARING VIOLATES PLAINTIFF'S DUE PROCESS

On September 7, 2018, Plaintiff wrote a letter to the Court with an attached copy of an email exchange with the FDIC dated September 6, 2018. **Exhibit H**. The letter pointed out that this Court was required to provide "notice and an opportunity to oppose" limiting a pro se litigant access to the courts and to create an "adequate record for review," see *Justice v. Koskinen*, 10-9 F.Supp. 3d (D.O.C. 2015). The Court's action was precipitated by the Court and the FDIC's failure on multiple occasions to address the following core dispositive issues: 1) the State's total lack of jurisdiction over Plaintiff's FIRREA claims as of September 25, 2008; 2) that the State decision repeatedly violated the FDIC's Mandatory and Exclusive Stay Period, and 3) that Chase never owned the Navesink or Rumson loans. Under no definition could the Plaintiff be determined to be a "vexatious litigator" without notice and an opportunity to oppose such an order. At Oral Argument on July 18, 2018 (see transcript at page 7) the Court stated:

> THE COURT: I hope it's evident to you the amount of time and attention and care I've taken to make sure that you have your day in court - - to make sure that all of your arguments are considered and addressed and in a timely manner."

The record, however, is devoid of any response by the Court or the FDIC addressing the three core dispositive issues listed above. When the Court and the opposing party refuse to address the issue of the Court's jurisdictional power to act, such an issue cannot be considered

frivolous. For the Court to additionally restrict Plaintiff's access to the Court for raising the issue of the Court and the FDIC's refusal to address the jurisdictional authority and the Court's power to act is a violation of Due Process.

## THE COURT WAS JUDICIALLY ESTOPPED FROM DECIDING PLAINTIFF'S FIRREA CLAIMS ON A BASIS DIFFERENT THAN THAT DECIDED BY THE STATE COURT ON FEBRUARY 2, 2018 OF THE SAME ISSUE

Chase in its Reply Brief filed November 11, 2016 in the State Court Law Division of the Monmouth County Superior Court (**Exhibit I**), wrote at page 4:

> "B. **FIRREA Did Not Apply to Plaintiffs' Counterclaims and Therefore Did Not Divest the Chancery Division of Subject Matter Jurisdiction.**
>
> Even assuming that the Roggios' claims had not been resolved, FIRREA still did not divest the Chancery Division of subject matter jurisdiction as the Roggios' claims were preexisting and the FDIC was never a "substituted party" in the case. Throughout their Opposition Brief, Plaintiffs assert several convoluted arguments in support of their proposition that the Chancery Division lacked subject matter jurisdiction over their counterclaims. However, for FIRREA to create federal jurisdiction over state law claims, such as those asserted by the Roggios, the FDIC must be a "substituted party" in the action. Because the FDIC never substituted in nor was joined as a party to the Navesink Foreclosure, all of Plaintiffs' arguments derived from various sections under FIRREA are inapplicable and without merit.

As pointed out above (*Supra,* page 4) the FDIC did not need to be "substituted in as a party as it was *automatically* a party to the Receiver litigation on September 25, 2008 and, as of that date, the FDIC had **exclusive jurisdiction** over Plaintiff's post-receivership borrower claims, and indeed "all suits of a civil nature at common law or in equity to which the Corporation [FDIC] in any capacity, is a party…" and had to, mandatorily, be decided by a Federal Court (*supra*, page 4).

In the matter of _Levin v. Robinson_ *Wayne & La Sala*, 586 A.2d 1348, 1357 (N.J. Super 1990), the Court wrote:

As the Court of Appeals noted in *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 n. 14 (3rd Cir. 1994)

> "[T]his court has recognized the doctrine of judicial estoppel to bind parties to factual legal positions taken in litigation in both the case in which the party has taken a position and in subsequent litigation. . . . (emphasis supplied) citing *Lewandoski v. National P.R. Passenger Corp*, 882 F.2d 815, 818-19 (3rd Cir. 1989)

This is a <u>post-receivership</u> matter, governed by the FIRREA Statute and must be decided by Federal Law. In <u>*Lewandoski, supra*</u> the Court wrote:

> A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with this earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate. *Id.* at 512-13; see also *Murray v. Silberstein*, 882 F.2d 61 (3rd Cir. 1989); *O'Neida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.), *cert. denied*, -- U.S. --, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Bower v. O'Hara*, 759 F.2d 1117, 1127, 1129 (3rd Cir. 1985) (Sloviter, J., concurring and dissenting).

In <u>*Helford v. Gerson*</u>, 105 F.3d 530, 535 (9th Cir. 1997) the Court wrote:

> The greater weight of federal authority, however, supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion. *See In re Cassidy*, 892 F.2d 637, 641-42 (7th Cir.), *cert. denied*, 489 U.S. 812, 111 S.Ct., 48, 112 L.Ed.2d 24 (a990); *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 n.14 (3d Cir. 1989); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214-15 (1st Cir. 1987); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166-67 (4th Cir. 1982); *AFN, Inc.* 798 F. Supp. At 224. The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.

However, in its brief, Chase continues to put forth contrarian legal position regarding preemption and jurisdiction stating (*see*, Ex. I, p. 5-6):

1. **The Chancery Division Was Not Automatically Divested of Subject Matter Jurisdiction upon the FDIC's Appointment as Receiver.**

Plaintiffs rely upon 12 U.S.C. 1819(b)(2)(A) to support their erroneous conclusion that upon the FDIC being appointed as receiver, the federal courts automatically obtained exclusive jurisdiction over their claims,

thereby depriving the Chancery Division of jurisdiction. **FIRREA provides that all actions in which the FDIC is a party arise under the laws of the United States.** See 12 U.S.C. §1819(b)(2)(A).

Chase itself acknowledges that FIRREA provides that "all actions in which the FDIC is a party arise under the laws of the United States." Apparently it just does not agree that the FDIC was ever a party to WaMu's assets. Chase instead argues that for Federal jurisdiction to be activated, the FDIC must first "remove" an action to the Federal Court. Chase states that: "nowhere in the statute did Congress create exclusive jurisdiction in the federal court over claims against a defunct financial institution in which the FDIC is not a party." Chase rationalizes its claim, stating (at page 5):

> Plaintiffs overlook two salient facts. <u>First, the FDIC was not a party to the Navesink Foreclosure</u> – the FDIC never sought to intervene and the Roggios never joined the FDIC as a party. Second, even if the FDIC was a party to the Navesink Foreclosure, <u>the statute is permissive in that the FDIC would have had the option to remove the action to district court, though it would not have been required to do so.</u> <u>Id.</u> Nonetheless, despite the lack of statutory authority, and ignoring the fact that the FDIC was not a party to the Navesink Foreclosure, Plaintiffs make the quantum leap that because the statute confers upon the FDIC the option to remove an action to federal court, the federal courts therefore have **exclusive jurisdiction** over all actions wherein the FDIC is named receiver of a defunct banking institution, **regardless of whether the FDIC files a substitution of party or seeks to intervene in the action. This conclusion is unsupported by the facts and legal authority.** <u>Id.</u> pgs. 4-6. (*See*, Ex. I)

The state court in its Final Order on February 2, 2008 (**Exhibit J**, pages 14-16) accepts Chase's specious argument.

THE COURT: Accordingly, Chase argues that FIRREA is inapplicable here. Chase also rebuts plaintiff's argument that FIRREA grants Federal Courts exclusive jurisdiction over cases involving any bank to which the FDIC was appointed receiver. Instead, Chase argues that FIRREA merely gives Federal Courts subject matter jurisdiction over such claims once the **FDIC becomes a** *substituted* **party**, thereby giving the FDIC the right to remove to Federal Court at that time on any such action. (Emphasis supplied)

Once again Chase's incredulous argument is that the FDIC was never a party to the FDIC receivership, but doesn't explain how the FDIC purportedly sold the Navesink and Rumson assets to Chase without being a party.

> THE COURT: Chase points out that in all of the cases on which plaintiffs rely for this issue, the FDIC was already a party, unlike the foreclosure actions at issue here. *Id* at 15

The party status of the FDIC is not determined by a foreclosure date, but by the time that the FDIC steps into the shoes of a failed bank.

> THE COURT: With respect to FIRREA's requirement that claimants exhaust administrative remedies before filing suit, Chase states that plaintiffs already filed an administrative claim with the FDIC, although the Roggios have not identified the outcome of that claim procedure. Chase contends that the Roggios did exhaust their administrative remedies under FIRREA, and that even if they had not, the provision of FIRREA requiring exhaustion of administrative remedies does not apply to suits filed before the FDIC was made a receiver which is the case here. *Id* at 15

Because the Federal Court is still in the process of deciding the borrower claims, the administrative remedies have not been exhausted. Plaintiff has never filed an action in State Court against WaMu. Plaintiff did files the borrower claims at bar on January 14, 2009 ***after*** the FDIC was appointed Receiver on September 25, 2008. The FDIC was thus already a party to this borrower claims action filed January 14, 2009 in this Court, as mandated by law. This 2009 filing provided original Federal question jurisdiction to the District Court of the District of Columbia *exclusively*.

Plaintiff's current state case against Chase is a law division matter for the liabilities outside of the claims against WaMu. At Oral Argument on January 6, 2017 (**Exhibit K,** p. 7–8), the Court challenged Chase counsel, Cristina Sinclair, Esq., to explain why the State Chancery Court would have jurisdiction over the borrower claims. The argument forwarded by Sinclair was also based on an erroneous position about the FDIC's role as a party:

THE COURT:   Okay, Okay.   What about, so the Count 1?

MS. SINCLAIR:   Well, Count 1 is - - the argument raised by Mr. Roggio's counsel - -

THE COURT:   It's basically that the Court, the Chancery Court didn't have jurisdiction, right?

MS. SINCLAIR:   Correct, that's the gist of their argument.   But if you take a look at the FIRREA, the Financial Institutions Recovery Enforcement Act, in order for that preclusion to jurisdiction to apply, **the FDIC has to be a party to the action.**   Once - - so there's a few arguments as to why we say it doesn't apply.   First, **they never were a party to the action.**

THE COURT:   The FDIC?

MS. SINCLAIR:   The FDIC.   Counsel seems to imply that Chase had some affirmative obligation to join them, and there's just no legal support for that proposition.   And if you read the statutory language in FIRREA, **it's permissive,** that the FDIC may choose to join to intervene in an action.   In this instance, they did not.   The Roggio's also had the **option of joining the FDIC, which they did not do.**   So unless and until the case law is very clear that in order for this to be a **preclusion,** for FIRREA to be a **preclusion to jurisdiction, they must be a party to the action in order for that bar to apply.   And because that didn't happen here, there was no preclusion.**   And it's not an automatic triggering event.

Ms. Sinclair's reliance on the "permissive" language of the Statute above is misplaced and caused the Court to act in reliance on a false premise. The "permissive" option referenced above is *not* permissive in a post-receivership case filed in the Federal District Court in the District of Columbia, as mandated by 12 U.S.C. § 1821(d)(8).   Moreover, the "permissive" language applies to State banks, not Federal Banks such as WaMu.

The issue continued at Oral Argument May 26, 2017 (**Exhibit L**, pages 27 – 30):

THE COURT:   Why didn't you file it in Federal Court?

MR. ROGGIO:   File what in Federal Court?

17

THE COURT: Why didn't you remove it to the Federal Court?

MR. ROGGIO: **The FDIC wasn't a party** [nor could it be post-receivership in a state case]. Chase remained the [unnamed] party. That's the whole skullduggery in this thing. Chase never claimed - - this **caption of this case was WaMu right after judgment**. Look at the judgment. The final judgment is in the name of WaMu. How are we gonna have WaMu in this case?

THE COURT: Okay, thank you.

MR. ROGGIO: If the FDIC had been there, we would have - - the FDIC would have removed it to Federal Court. The bottom line is that the FDIC is not in the business of spending money when it has the assets already. It only spends money when it doesn't have the assets.

As of September 25th, 2008, this Chancery Court, we asked Chase to answer the simple question, as of September 25th, who had jurisdiction over the Rumson and now the Navesink. The answer is simple, it's the FDIC. The idea that a Chancery Court would have authority over the FDIC's assets is absurd. And as of that date, this Chancery Court had no jurisdiction.

At oral argument on October 13, 2017 (**Exhibit M,** p. 13-15) the following colloquy

continued on the jurisdictional issue:

MR. ROGGIO: Now, next you have the general limitations on judicial review, 12 U.S.C. 1821(a)(13)(d), any action seeking a determination of right - -

THE COURT: **So that's - - you're citing federal procedure?** [Plaiintiff was citing the Federal Statute, not procedure] **It's not federal - - we're in the - - we're not in federal court.**

MR. ROGGIO: This case is in - -

THE COURT: It's not a federal court.

MR. ROGGIO: This case is in federal court, Judge.

THE COURT: This case, right here?

MR. ROGGIO: The - -

THE COURT: This one right here? This is a state court.

MR. ROGGIO: **The moment the FDIC took over these assets, this is a federal court question, not a state question.** That - - you just proved the point --

THE COURT: Right. Procedural - -

MR. ROGGIO: - - that it shouldn't be - -.

THE COURT: - - law - - procedural law is governed by the jurisdiction.

MR. ROGGIO: **The jurisdiction, Judge, is decided by what the federal statute says, not by the state. You just hit it right there on the head. What was this doing in state court?**

THE COURT: You're misinterpreting what I said.

MR. ROGGIO: Okay, Judge. There's still a general limitation on any court, state or federal. That's what the limitation says. Any court, state or federal, deciding this - - anything to do with FDIC assets after September 25th, 2008. And yet, this Court, the Chancery Court, did that with impunity. So there - - the whole idea that it's a federal matter? Yes. Guess what, Judge? The argument from Chase, which you accepted, both at oral argument and in your February 2nd order, what was it? **Chase says Roggio never remanded the case to federal court. Chase says the FDIC never remanded the case to federal court. It was in federal court as of September 25th. Why do you think the District of Columbia, as a federal case, has *Vincent Roggio v. the FDIC*? Is that not a federal court, Judge?**

Here, for the Federal District Court to deny the FIRREA mandates, based on a State court's February 2, 2011 Decision, then it must also find that when Plaintiff filed his borrower claims at bar on January 14, 2009 in this Federal Court, and when Plaintiff filed this lawsuit on September 11, 2009 against the FDIC in this Federal Court, that the FDIC was never a party to the Rumson and Navesink assets, i.e. loans.

To make this finding would also require this Court to find that in this Court, with original federal question jurisdiction, in a post-receivership case, with the FDIC as the sole defendant,

which purportedly transferred Plaintiff's loans to Chase – the FDIC never reached "party" status. Plaintiff respectfully submits that such a finding would appear to be either wholly in error or blatantly impartial.

Plaintiff further submits that because the Court has already acknowledged its original federal question jurisdiction in this matter on May 25, 2018 and July 18, 2018 that any contradictory position in the State is judicially estopped.

## PLAINTIFF HAS A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN HIS HOME AND THE COURT'S REPEATED REFUSAL TO ENFORCE ITS ORIGINAL JURISDICTION, BEFORE PLAINTIFFS BORROWER CLAIMS WERE DECIDED, HAS DEPRIVED PLAINTIFF HIS OPPORTUNITY TO BE HEARD AT A MEANINGFUL TIME AND IN A MEANINGFUL WAY

In *Freeman v. FDIC*, 56 F.3d 1394, 1403 (D.C.Cir. 1995) the Court wrote:

> The Due Process Clause of the Fifth Amendment provides that **"[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."** The "root requirement" of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut*, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 13 (1971) (emphasis in original). "The purpose of this requirement is not only to ensure abstract fair play to the individual" but **"to minimize substantively unfair or mistaken deprivations of property. . . . "** *Fuentes v. Shevin*, 407 U.S. 67m 80-81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

Here, the property is the substantive subject of the borrower claims at bar. Any attempted foreclosure on either the Rumson or Navesink properties is wholly bound by a Settlement Agreement, an Agreement that the state court found, on June 2, 2010 had been breached by WaMu. WaMu, and now Chase, have no standing regarding the property unless and until the borrower claims are decided.

> Undoubtedly, the Freemans have a **constitutionally protected property interest in their home.** See *United States v. James Daniel Good Real Property*, __U.S. __, __, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 (1993); *Propert v. District of*

*Columbia*, 948 F.2d 1327, 1331 (D.C.Cir. 1991). Although "[w]e tolerate some exceptions to the general rule requiring predeprivation notice and hearing . . . in extraordinary situations," *James Daniel Good Real Property*, __U.S. at __, 114 S.Ct. at 501 (citation and quotation omitted)

Here, when Plaintiff filed his lawsuit on September 11, 2009 against the FDIC as Defendant (*See*, Ex. B), the FDIC filed a Memorandum of Law in Support of Defendant's Motion to Dismiss or in the Alternative to Stay on January 4, 2010 (*See*, Ex. E). If the Court had properly enforced its original subject matter question jurisdiction at that time, the Motion consented to by FDIC counsel and Plaintiff's counsel (which resulted in 13 stays spanning nine years) could never have taken place because a FIRREA case, filed in Federal Court cannot be stayed by a pending case in the State Chancery Court. As of September 25, 2008, once the FDIC became Receiver, no court but this Federal court had original jurisdiction, *see* 12 U.S.C. Section 1921 (d)(13)(D), over the Rumson and Navesink assets.

Throughout the current litigation, both the Court and the FDIC have claimed that Chase was the "successor in interest." However, throughout the 13 stays and 9 years, Chase itself never claimed to be "successor in interest." Chase is plainly never mentioned as a party, and did not even claim to be a party in the State court until November 2010 and, to this day, has never been a party to either the Rumson or Navesink foreclosure complaints, which were filed in 2006. Chase knew it could not be a party as it had no standing because it had no liability for the borrower claims against WaMu as per the Purchase and Assumption Agreement ("PAA"). The FDIC is the *only* party responsible for Plaintiff's borrower claims, and the FDIC was never a party to the State cases.

These indisputable facts stripped the New Jersey State courts of subject matter and personal jurisdiction as of September 25, 2008. The FDIC specifically and repeatedly claims

that Plaintiff was filing his claim in both this Court and the state court simultaneously. That is an impossibility when the FDIC was never a party in the state cases.

## THE COURT HAS IGNORED FIRREA AND RELIED INSTEAD ON THE ANTI-INJUNCTION ACT TO ENABLE THE STATE TO SELL PLAINTIFF'S HOME BEFORE THE BORROWER CLAIMS ARE PROPERLY DECIDED AS PER THE MANDATED STATUTORY LAW

On July 23, 2018 counsel for the FDIC, Jamie W. Luse, Esq., wrote a letter to Plaintiff pointing out that on January 7, 2010 she had received a phone call from Plaintiff's former counsel (now retired) in the State litigation, Harold Goldman. **Exhibit N**. In her letter, Ms. Luse states that Mr. Goldman had previously advised Ms. Luse that Plaintiff would be willing to consent to a dismissal of the Federal case with prejudice if the FDIC-Receiver would agree to substitute its appearance for WaMu in the New Jersey litigation. Apparently, the FDIC declined. Again – there is no mention of Chase by the FDIC. Any claims now that Chase was the "successor in interest" to Plaintiff's assets is nothing more than a myth perpetuated by the FDIC.

Moreover, Chase itself is using this Court's refusal to enforce its own subject matter jurisdiction as a foil for the State court to continue to assert its jurisdiction instead and in violation of the FIRREA Statutes. Following out that purported legal logic would mean that Chase could be the Plaintiff in the State court on the same subject matter as with the FDIC as a Defendant in the Federal court. This is a preposterous proposition for the FDIC or the Court or any litigant to put forth at any time as it is well-settled that two courts cannot decide the same issues simultaneously. Here it is even more preposterous given that the Federal Court is mandated with original subject-matter jurisdiction over a case involving the FDIC, not Chase, and was filed over a year before the State court improperly decided the borrower claims issues.

The only lawsuit in which the FDIC is and has been a party is in the matter at bar, filed September 11, 2009. The March 4, 2014 Minute Order issued by The Honorable Ellen S. Huvelle, U.S.D.J. states:

> MINUTE ORDER: The Clerk's Office is directed to administratively close this matter pending further Order of the Court. Such administrative closure does not serve as a dismissal of either party's claims or defenses. It is without prejudice to, and will have no effect upon, either party's rights, claims, or defenses, except to the extent that defendant may not argue that as a result of this stay, plaintiff's claims are untimely or have not been exhausted. The matter will be reinstated upon notice by either party. SO ORDERED. Signed by Judge Ellen S. Huvelle on behalf of the Calendar Committee 3/4/2014. (tcb) (Entered: 03/04/2014) (Emphasis supplied).

Shortly thereafter, on July 3, 2014, Chase made its first attempt in a letter brief and certification to make Chase the "new plaintiff" in the State case. **Exhibit O**. If Chase were already the successor in interest, why would it need to become the "new" plaintiff? The motion by Chase was denied. Also notable is that as of September 25, 2014, the FDIC would be time-barred from pursing Plaintiffs mortgages, *see* 12 U.S.C.S. §1821(d)(14)(A)(I).

Contrary to *Freeman*, Plaintiff here has *not* had an opportunity to be heard prior to the deprivation because Plaintiffs borrower claims have never been heard and his properties have been sold without due process of law. The Court here has not seen fit to stay the State proceedings, nor to advance the borrower claims case. Instead, the Court has relied on the Anti-Injunction Act to enable the State to proceed with foreclosure of Plaintiff's home without being meaningfully and properly heard on the borrower claims. The Anti-Injunction Act does not supersede a Federal court's original subject matter jurisdiction or the Fourteenth Amendment Due Process Clause to the U.S. Constitution. Here, at no time, has Plaintiff been provided the opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 38 U.S. 545, 552, 85 S. Ct. 1187, 1191 14 L. Ed.3d 62 (1965). The facts presented here are completely supported by the record and are a substantial violation of Due Process.

Plaintiff here, in a motion filed in the State case against Chase filed December 17, 2018 presented to the state court a prior *Certification* by Chase swearing that the EMC Mortgage Corporation was the owner of the Rumson note and mortgage at the time of foreclosure June 21, 2006 (*See*, Ex. O)  This EMC ownership was over two years before Chase allegedly became the "successor in interest" to these WaMu loans on September 25, 2008.  Under New Jersey Law *only* the owner of the note or the entity that controls the note *at the time of foreclosure* can foreclose on the property. *Wells Fargo Bank, N.A. v. Ford*, 418 N.J.Super. 592, 597 (App. Div. 2011) (quoting *Bank of N.Y. v. Raftogianis*, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010).

On November 22, 2018, counsel for Chase, Richard Haber, Esq. filed a brief in opposition in which he contested Chase's own prior Certification stating (**Exhibit P, p. 9**):

> For one of their standing Arguments, a red herring, the Defendants point to a document purportedly **filed in this matter by Zucker, Goldberg & Ackerman, LLC** on July 3, 2014, which **states that "[t]his foreclosure was initiated in the name of EMC Mortgage Corporation, who at the time the Complaint was filed, was the owner pursuant to N.J.S.A. 12A:3-301 of the subject Note and Mortgage**." (Defendants' Motion, Exhibit D).  Not only is this statement demonstrably inaccurate – there can be no dispute that the action was initiated in WaMu's name, not EMC Mortgage Corporation – the **now-defunct law firm of Zucker, Goldberg & Ackerman, LLC ("ZGA") had no authority to file any papers in this matter because it ceased being counsel of record for the Plaintiff** *over five years prior* **to the purported filing (ZGA substituted out on June 5, 2009 and never re-filed an appearance in the case** notwithstanding what seems to be a <u>rogue filing</u> on July 3, 2014).  Obviously Plaintiff is not bound by a clearly erroneous statement made by a firm, which has subsequently been dissolved, and which was **not representing WaMu or Chase in this matter at the time the statement was made.** (Emphasis added)

Chase is absolutely correct that Zucker did not have the authority to claim his firm was was counsel for WaMu on May 12, 2014 because, as Chase itself points out, the Zucker firm withdrew from the case on June 15, 2009. **Exhibit Q.** There can be no question when Zucker "certified the foregoing statements made by me are true" they were indeed false. Zucker was not counsel for WaMu at that time and WaMu did not and could not authorize Zucker to transfer the deed to Chase because the FDIC owned the Navesink loan as of September 25, 2008, not WaMu.

Of even more notable consequence is that Chase further certified to the Court that Chase, was "unaware" of Zucker's certification which Chase used to become the recipient of the Navesink deed and property. Chase has since sold the property.

After Zucker had withdrawn from the state matter on June 15, 2009 and over the course of the next fifty-eight (58) months, Zucker never uttered an appearance in the case. However, on April 25, 2014, out of nowhere and without notice, Zucker writing on behalf of his own law firm, sent a letter to the Sheriff's Office of Monmouth County stating that Zucker was representing the plaintiff, WaMu, and instructed the Sheriff to adjourn the scheduled sale to a later date. The sworn certification, dated May 12, 2014, filed by "Leonard B. Zucker," personally and on behalf of his firm (**Exhibit R**, with emphasis added in the transcription below) states:

LEONARD B . ZUCKER does hereby certify:

1. I am an attorney-at-law of the State of New Jersey and a member of the firm of ZUCKER, GOLDBERG & ACKERMAN, LLC, **attorneys for plaintiff in the above entitled action [Washington Mutual Bank** f/k/a Washington Mutual Bank, FA v. Vincent Roggio, et al. Docket No. F-10401-06].

2. I hereby **certify that the Plaintiff set forth above does assign, set over and transfer to JPMorgan Chase Bank,** National Association, P.O. Box 21367, Greensboro, NC 27420 which premises are commonly known as **467 Navesink River Road, Red Bank, NJ 07701** which sale arose out of a suit instituted by Plaintiff **to foreclose a**

**mortgage on said premises**, and said <u>**Plaintiff does authorize and direct the Deed for**</u> <u>**said premises to be executed and delivered by the Sheriff to the said assignee**</u>.

     3. **I certify that the foregoing statements made by me are true**; I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

               ZUCKER, GOLDBERT & ACKERMAN, LLC

               Attorneys for Plaintiff

               BY:___/s/_____

                   LEONARD B. ZUCKER

This letter was filed by Chase's admittedly "rogue" law firm just seventeen days after Zucker has asked for an adjournment of the sale. Later. On May 12, 2014, Zucker also sent a letter to the Sheriff (**Exhibit S**) specifically directing the Sheriff to change the name of the Deed from WaMu to Chase Bank, stating as provided here:

FCZ 77073

SHERIFF OF MONMOUTH COUNTY

VIA FAX: 732-294-5965

ATTN: SHERIFF'S SALES CLERK

         Sheriff#:     08001588

             Re:     Washington Mutual Bank f/k/a Washington Mutual

                      Bank, FA

             vs.     Vincent Roggio, et al.

     Docket No.     F-10401-06

     Premises:     467 Navesink River Road

                     Red Bank, NJ 07701

Dear Sir/Madame:

Pursuant to the above matter, which sale took place on 5/12/2014, the Deed will be prepared by:

<u>X</u>     THE SHERIFF OF MONMOUTH COUNTY

**The Deed should be prepared in the name of**

**JPMorgan Chase Bank, National Association. P.O. Box 21367, Greensboro, NC 27420**

Thank you for your assistance in this matter.

Very truly yours,

ZUCKER, GOLDBERG & ACKERMAN, LLC

By:_____

LEONARD B. ZUCKER, ESQ.

LBZ/jpar
Enclosures

According to Chase, Zucker's actions on behalf of Chase in April and May of 2014 are now categorized as "rogue" actions. Chase, however, not only benefitted from that transfer of the deed from the name of WaMu to the non-party, but Chase is persisting in its attempt to do the same today.

While the Zucker letter to the Sheriff Sales Clerk would appear to be legitimate (and why would anyone suspect otherwise), the fact remains that Chase was not a named party to the lawsuit, and did not take the very simple steps to become the named party. Since the Rules governing a party becoming successor-in-interest are so easily available, to any legitimate party, the odd maneuverings by Zucker only further the resemblance of a scheme to deceive.

As shown in the latter itself (*see,* Ex. S) the Zucker letter above, by an unauthorized representative of the Court, directing the name of the deed be changed also included a specific "note" to the Sheriff regarding payment of the Sheriff's fees, which states:

*Note: We wish to avoid any delay in obtaining the Sheriff's Deed. Accordingly, if there is a balance due your office, please fax your invoice to 908-232-4215, Attn: Sales Dept., [Zucker fax] so that we may promptly process your invoice. Thank you for your courtesy and attention.*

The footnote above assures the Sheriff that the ten thousand two hundred and sixty dollars ($10,260.00) in fees would be attended to by Zucker. This assertion of processing payment also seems to portray in the mind of the Sheriff's Sales Clerk that the Zucker firm was authorized to act on behalf of WaMu. It wasn't. If the rightful claim as a party by Chase were legitimate, there would have been no need for Zucker to masquerade as the attorney of record. It remains unclear as to who compensated Zucker for his letter writing and fee payment.

Leonard B. Zucker was a co-defendant in Plaintiff's State case from 2015 through 2017, as a result of the letter and false certification submitted by Zucker and relied on by the Sheriff. Zucker's lawyer and Chase's lawyer stood shoulder-to-shoulder throughout those proceedings concerning the Navesink deed and never once brought to the attention of the Court or to the Plaintiff that Zucker's conduct was unauthorized. The glaring dishonesty of Chase's current "rogue" defense should shock the conscious of any court. But for Zucker's "rogue" and falsely sworn Certification, the Navesink deed would not have been subject to sale by Chase, for the third time, in 2014. (*See*, Ex. I, pgs. 27-28, Plaintiff's Opposition to FDIC's motion to dismiss)

Based on the record here and in the State, there can be no wonder why Plaintiff's borrower claims are justly brought before the Federal Court and why Plaintiff's claims against Chase exist in the State court.

Ultimately, Plaintiff seeks only to ensure that his claims are properly heard, in the proper jurisdiction, involving the proper parties, and the proper law.

## THE COURT'S CONTINUED REFUSAL TO ENFORCE ITS OWN SUBJECT MATTER JURISDICTION AND PLAINTIFF'S DUE PROCESS REQUIRES RECUSAL

Pursuant to 28 U.S.C. Section 455 (a) the standard for recusal is as follows:

> "If a reasonable objective person knowing all of the circumstances would have questioned the judges impartiality."

The following facts, which are fully supported by the record, are now uncontroverted and substantiate the frauds perpetrated by WaMu:

1. The February 22, 2007 letter sent by WaMu, which was initially represented by WaMu as true, but later admitted to as false, to purportedly correct WaMu's admitted false credit reportings which had decimated Plaintiff's financial livelihood, in fact, never addressed any of the issues contained in Plaintiff's counterclaims as required by the Settlement Agreement with WaMu. The letter, on its face, claimed to fix credit starting in 2006 when, as Judge Lawson found on June 2, 2010, Plaintiff's was seeking WaMu to repair its false credit reporting staring in 2005, which had been fully outlined in Plaintiff's submissions to the Court at the time of the Settlement Agreement. In addition, following WaMu's collapse, and less than ninety-days into the mandatory and exclusive FIRREA Stay Period, Chase representative, Jamie Turnbow, on December 1, 2008, conceded in a certification that the February 22, 2007 letter did not correct the false credit reportings as required. (*See*, **Exhibit T**) Each of the above facts are documented with exhibits in Plaintiff's August 17, 2018 Opposition to the FDIC's Motion to Dismiss, (*See*, Ex. G, p. 11-12) The above facts are exacerbated by the fact that Judge Cavanaugh in a plenary hearing on June 17, 2008 ordered WaMu to provide actual and true evidence within 48 hours that the false credit reporting had been corrected as per the Settlement Agreement. WaMu never responded to the Order.

Would a reasonable objective person, knowing all of the circumstances, question the judge's impartiality when the judge has refused to address this issue for the last nine months?

2. The January 25, 2007 Settlement Agreement (**Exhibit U**) required that WaMu correct its admitted false credit reporting "within 30 days," after which the Plaintiff had 60 days to refinance the Navesink and Rumson properties. WaMu reiterated this conditioned prerequisite of the Settlement Agreement in a Certification submitted to the Court and at a plenary hearing on June 17, 2008 (Ex. G, p. 26-27). Plaintiff objected to the terms of the April 30, 2007 Navesink and Rumson proposed Order on March 2, 2007 (**Exhibit V**). Yet this Court and the state court have declined to provide the Plaintiff with a hearing on this issue for over 11 years, in violation of the Plaintiff's Due Process. Further, as the record shows, on August 17, 2018, this Court Ordered that this issue be decided by the New Jersey Appellate Division despite its rightful place before this Court as one of the Plaintiff's FIRREA claims.

Would a reasonable objective person knowing all of the circumstances set out above question the judge's impartiality in refusing for nine months to address this issue?

3. In the Sate court's Opinion of June 2, 2010, Judge Lawson found WaMu had breached the Settlement Agreement for not correcting its false credit reporting, and indeed allowing the false credit reporting to continue, unabated, for an additional two years. Judge Lawson also found that Plaintiff breached the Agreement for failure to provide an updated credit report to WaMu in March of 2007, even though the report reflected that there was no update, as the credit had not been corrected as acknowledged by WaMu. On March 5, 2008 Judge Cavanaugh wrote in an Order:

> THE COURT: Now in fairness to Mr. Roggio, he did not receive a copy of this [April 30, 2007] Order till August 2007. I did note at the Oral Argument that I certainly couldn't find that he had delayed his response until he had a copy of Judge Lehrer's Order because quite frankly how would he know what the terms were.

Judge Lawson's subsequent Opinion concurred with Judge Cavanaugh's findings on June 2, 2010 the Court writing (at page 6): "Mr. Roggio did not receive the April 30 Order until August 2007." (*See*, Ex. G, pages 22-23)

Would a reasonable objective person knowing all of the circumstances have questioned the impartiality of the judge if the judge as here has declined for nine months to address this obvious due process violation without a hearing?

Plaintiff could continue here with a plethora of issues as outlined in his substantive borrower claims. This motion and these issues are presented out of concern for the Court's silence, for many months, over the issues of jurisdiction that remain unanswered and that are causing grave circumstances regarding the seizure of property without proper jurisdictional authority or Due Process.

## CONCLUSION

For the above stated reasons, Plaintiff respectfully requests the Court to address the issue of its mandated jurisdiction and the Due Process violations.

Respectfully Submitted,

Vincent Roggio, Pro Se

January 3, 2019

## Certificate of Service

This is to certify that a true and correct copy of the foregoing has been sent via priority mail and email on January 3, 2019 to Jaime W. Luse, Esq. at Tydings & Rosenberg, LLP, 100 East Pratt Street, Ste. 901, Baltimore, MD 21202, as attorneys for Defendant Federal Deposit Insurance Company as Receiver for Washington Mutual Bank.

Vincent Roggio