# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| VINCENT ROGGIO, *Plaintiff*, v. FEDERAL DEPOSIT INSURANCE CORPORATION, *Defendant*. |

Civil Action No. 9-1733 (TJK)

## MEMORANDUM OPINION

Vincent Roggio sues the FDIC, as receiver for the now-defunct Washington Mutual, for various contract and tort claims arising out of Washington Mutual's foreclosure on two properties owned by Roggio and associated litigation in the New Jersey state courts. The FDIC moved to dismiss, arguing that all of Roggio's claims are barred by the doctrine of collateral estoppel as a result of the aforementioned New Jersey state litigation, that the Court lacks jurisdiction over some counts, and that some counts fail to state a claim. For the reasons explained below, the Court will grant the FDIC's motion to dismiss.

## I. Background

This case has a long and complicated procedural history. In 2006, Washington Mutual ("WaMu") initiated a pair of actions in New Jersey Superior Court, which were later consolidated, to foreclose on two of Roggio's properties. *See* ECF No. 60 ("Am. Compl.") ¶ 18. As part of those proceedings, Roggio and WaMu entered into a settlement in January 2007 through which Roggio agreed to waive his affirmative defenses and counterclaims if WaMu undertook actions to retract derogatory credit reporting about him that it had provided to credit rating bureaus. *Id.* ¶ 19. But Roggio, proceeding *pro se*, opposed entry of the orders

memorializing the settlement, claiming that they did not accurately reflect the parties' agreement. ECF No. 62-4 at 3.[1] The New Jersey court entered the orders over Roggio's objections in April 2007. *Id.*; *see* ECF No. 62-3. Roggio, by then proceeding with counsel, moved to vacate portions of the settlement order in January 2008, claiming that WaMu had breached the agreement by failing to correct his credit reporting. *See* ECF No. 62-9 at 8–9. The court denied the motion in March 2008, and around the same time, the New Jersey Chancery Court entered a final judgment against Roggio in one of the actions (the "Red Bank action"). *See id.*; ECF No. 62-5. Later that month, Roggio moved for reconsideration of that judgment; in August 2008, he filed an amended counterclaim in the other action (the "Rumson action") alleging that WaMu breached the settlement agreement; and in December 2008, he moved to declare WaMu in breach of the settlement, seeking to reinstate his counterclaims and defenses as well as file a new counterclaim for damages. ECF No. 62-8 at 8, 12; ECF No. 62-6 at 3–4, 25–28. Roggio alleged that by the time WaMu corrected his credit reporting, his business, which relied on his good credit, had been destroyed. Am. Compl. ¶¶ 8, 21. The New Jersey Superior Court denied both motions in June 2010, finding that WaMu had breached the settlement by failing to make the appropriate corrections to Roggio's credit until November 2008 but also that Roggio himself had breached the settlement. ECF No. 62-8 at 21–23. Roggio then filed another motion for reconsideration, which the court denied in October 2010. ECF No. 62-9. Finally, in October 2010, he moved to dismiss, arguing that WaMu's successor in the case, JPMorgan Chase, N.A.

---

[1] The Court may consider the FDIC's exhibits pertaining to the New Jersey litigation because the Amended Complaint refers to them. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (permitting the court to "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice"). Additionally, the Court "may take judicial notice of public records from other proceedings." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012).

("Chase") did not have standing to foreclose on him because it had not properly acquired his loan. *See* ECF No. 62-10 at 13–14. The court denied that motion as well. *Id.* at 14.

Meanwhile, in September 2008, the FDIC was appointed receiver of WaMu. Am. Compl. ¶ 23. Roggio filed an administrative claim with the FDIC, and after it was disallowed, he filed this case in September 2009. *Id.* ¶¶ 24–25; ECF No. 62-7; ECF No. 1 ("Compl."). The Complaint asserts several causes of action for WaMu's alleged failure to abide by the settlement. Compl. ¶¶ 27–54. For many years, the case was repeatedly stayed at the request of both parties "in light of the parallel state court action" in New Jersey. ECF No. 5. On March 4, 2014, the Court entered a Minute Order directing the Clerk to administratively close the case, but noted that it would be "reinstated upon notice by either party." Minute Order of Mar. 4, 2014.

Back in New Jersey, Roggio appealed to the Appellate Division of the New Jersey Superior Court in the Red Bank action, reasserting his argument that Chase lacked standing because it did not own the loans. *See* ECF No. 62-10 at 3. The Appellate Division affirmed the trial court, rejecting Roggio's argument, in August 2012. *See generally id.* Nothing of note appears to have happened until August 2017, when Chase filed an amended complaint in the Rumson action. *See* ECF No. 62-2 ¶ 17. The New Jersey court entered final judgment against Roggio over his objection in the Rumson action in February 2018. ECF No. 62-12; ECF No. 62-2 ¶¶ 19–20. Roggio then filed a motion for reconsideration, which was denied. ECF No. 62-2 ¶ 21; *see* ECF No. 62-13 at 3.

Roggio moved to return this case to active status in February 2018, ECF No. 27, and amended his complaint in June 2018,[2] Am. Compl. The FDIC moved to dismiss, arguing that all

---

[2] The parties engaged in substantial motions practice throughout 2018 which does not bear on the disposition of this motion. *See Roggio v. FDIC*, No. 09-1733 (TJK), ECF No. 71 at 1 (D.D.C. Aug. 17, 2018).

3

the claims in Roggio's Amended Complaint are collaterally estopped by the final judgments in the New Jersey foreclosure proceedings, that the Court lacks subject-matter jurisdiction over Counts II, III, IV, V, and VIII, and that Counts III through VIII otherwise fail to state a claim. *See* ECF No. 62 at 1.

## II.     Legal Standard

The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. Fed. R. Civ. P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *Pitney Bowes, Inc. v. U.S. Postal Serv.,* 27 F. Supp. 2d 15, 19 (D.D.C. 1998). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," *Grand Lodge*, 185 F. Supp. 2d at 13–14 (cleaned up). A court is not limited to the allegations in the complaint but may consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997).

Under Rule 12(b)(6), the Court must dismiss a claim if a plaintiff fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19

(D.C. Cir. 2015).  Even so, "a complaint must have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  When considering a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018) (citation and internal quotation marks omitted).

While a *pro se* complaint "must be construed liberally, the complaint must still present a claim on which the Court can grant relief."  *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (citation and internal quotation marks omitted).  "A court considering a *pro se* plaintiff's complaint should look to all filings, including filings responsive to a motion to dismiss, to discern whether the plaintiff has nudged her claims across the line from conceivable to plausible."  *Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018) (cleaned up); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

### III.  Analysis

#### A.  Subject-Matter Jurisdiction

The Court must first address the FDIC's challenge to its subject-matter jurisdiction under Rule 12(b)(1).  The FDIC argues that the Court lacks subject-matter jurisdiction over Counts II–V, and VIII because Roggio failed to press the claims in those counts in the FDIC's administrative process, and thereby failed to exhaust his remedies.  *See* ECF No. 62-1 ("Def.'s Mem.") at 10–13.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) "establishes an exclusive administrative claims process for handling claims against banks in receivership with the FDIC." *Avery v. FDIC*, 113 F. Supp. 3d 116, 119 (D.D.C. 2015); *see* 12 U.S.C. § 1821(d)(13)(D). A claimant must exhaust this administrative process before suing, and exhaustion is a jurisdictional requirement. *Avery*, 113 F. Supp. 3d at 119; *see Westberg v. FDIC*, 741 F.3d 1301, 1303 (D.C. Cir. 2014).

The parties agree that Roggio filed a claim with the FDIC. *See* Am. Compl. ¶ 24; Def.'s Mem. at 12; ECF No. 62-6. But in his proof of claim to the FDIC, Roggio referenced only his counterclaim in New Jersey Superior Court for "breach of [the] settlement agreement and for compensatory and punitive damages related thereto," in the amount of $9,000,000. ECF No. 62-6 at 3. He also attached the counterclaim. *Id.* at 22–28. By contrast, Counts II–V and VIII of Roggio's Amended Complaint allege breach of implied covenant of good faith and fair dealing, tortious interference with prospective economic advantage, intentional misrepresentation, negligent misrepresentation, and violation of the New Jersey Consumer Fraud Act. Am. Compl. ¶¶ 30–47, 55–60.

The FDIC correctly argues Roggio did not present these claims to the FDIC in his administrative proof of claim, and so the Court lacks jurisdiction over them. Def.'s Mem. at 12–13. Roggio's proof of claim focuses only on his breach of contract claim and provides no hint as to the tort and statutory claims he raises in this litigation. *See* ECF No. 62-6 at 2–4, 20–28. Courts in this Circuit have consistently held that where "a complaint alleges entirely new legal theories that are different than those reflected in the administrative proof of claim, the Court is without subject matter jurisdiction to consider the new causes of action." *Jahn v. FDIC*, 828 F. Supp. 2d 305, 317 (D.D.C. 2011); *see also Westberg*, 741 F.3d at 1308–09; *BHC Interim*

*Funding II, L.P. v. FDIC*, 851 F. Supp. 2d 131, 138–39 (D.D.C. 2012) (collecting cases). Roggio does not meaningfully respond to the FDIC's argument on this point.[3] The Court will therefore grant the FDIC's motion and dismiss Counts II–V, and VIII for lack of subject-matter jurisdiction.

### B. Collateral Estoppel

The FDIC argues that Roggio's remaining claims—Counts I, VI, and VII—must be dismissed under Rule 12(b)(6) because they are barred by the doctrine of nonmutual defensive collateral estoppel. In support, the FDIC contends that Roggio has already litigated these claims against WaMu, and its successor, Chase, in the Red Bank and Rumson actions, each of which culminated in a final judgment. All these claims relate to WaMu's alleged breach of the settlement agreement. Count I alleges breach of contract, Count VI seeks determination of the proof of claim Roggio submitted to the FDIC (which, as discussed above, raised a breach of contract claim), and Count VII seeks a declaratory judgment that WaMu breached the settlement agreement.[4] Am. Compl. ¶¶ 27–29, 48–54.

Nonmutual defensive collateral estoppel "precludes a plaintiff from contesting an issue it has previously litigated and lost in another case against a different defendant." *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 446 (D.C. Cir. 2008). Although the FDIC grounds its arguments on the federal law of collateral estoppel (also known as issue preclusion),

---

[3] Roggio contends that this Court's Minute Order of March 4, 2014 precludes the FDIC from raising an exhaustion defense. But that order only prevents the FDIC from arguing that Roggio's claims are untimely or unexhausted "as a result of [the] stay" in this case. Minute Order of Mar. 4, 2014.

[4] The FDIC argues that a declaratory judgment cannot be a stand-alone claim in a complaint, and rather, should be part of the complaint's prayer for relief. *See* Def.'s Mem. at 17 (citing *Intelsat U.S. Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013)). Mindful of Roggio's *pro se* status, the Court construes him as seeking a declaratory judgment on his contract claim.

"a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, the Court must apply New Jersey rules of res judicata. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 404 F. Supp. 3d 1, 11 (D.D.C. 2019). In New Jersey, the party asserting collateral estoppel (here, the FDIC) must show that: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the proceeding." *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006) (quotation omitted). Further, collateral estoppel "will not be applied when it is unfair to do so." *Id.* (quotation omitted).

In determining the first factor—whether the issues are identical—a court must consider: "(1) whether the acts complained of and the demand for relief are the same . . . (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . and (4) whether the *material* facts alleged are the same." *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (emphasis in original) (quotation omitted). Although in some cases "the test for the 'identity of a cause of action for claim preclusion purposes is not simple,'" it is here. *Id.* (citation omitted). In this case, Roggio alleges that WaMu breached the January 25, 2007 settlement agreement. Am. Compl. ¶ 28. In the New Jersey actions, he alleged precisely the same thing. *See* ECF No. 62-8; ECF No. 62-9. The demands for relief are slightly, but not meaningfully, different. Here, Roggio asks for a

declaration that WaMu breached the settlement, a declaration that he may recover against the FDIC for WaMu's breach, and compensatory and punitive damages totaling $9,000,000. Am. Compl. ¶¶ 27–29, 49–50, 51–54. He also asks for a declaratory judgment that the FDIC wrongfully disallowed his claim. *Id.* ¶ 54. In the New Jersey actions, Roggio sought to hold WaMu in breach of the settlement agreement to permit him to reinstate his counterclaims and file another counterclaim for damages. ECF No. 62-8 at 2. He also sought to stay the foreclosure actions. *Id.* at 2–3. Although the form of the relief is slightly different, the substance is the same—ultimately, in both cases Roggio sought damages resulting from WaMu's alleged breach. The rest of the factors also support a finding that the issues are identical. The theory of recovery—that WaMu breached the settlement agreement by failing to correct Roggio's credit score in time—is the same. *See* Am. Compl. ¶¶ 19–22. The material facts are the same, and no party has identified any evidence about WaMu's alleged breach that this Court would need to consider that the New Jersey courts did not. Roggio responds by arguing that the issues are not identical because the FDIC was not a party in the state cases. ECF No. 72 ("Pl.'s Opp.") at 4. But this is irrelevant, as New Jersey recognizes nonmutual defensive collateral estoppel. *See Olivieri*, 897 A.2d at 1009 (requiring only that the party *against* whom estoppel is asserted was a party to the prior proceeding). For these reasons, the issues sought to be determined in Counts I, VI, and VII of Roggio's Amended Complaint are identical to those determined in the New Jersey actions.

The other requirements for collateral estoppel here are also satisfied. The issue of whether WaMu breached the settlement agreement, and whether Roggio could seek relief for that breach, were litigated and determined in New Jersey actions, where the Superior Court held that *both* parties breached the agreement, and so Roggio should not be relieved from his obligations

9

under the settlement or recover damages. ECF No. 62-8 at 23–24. The court reaffirmed this ruling on reconsideration. ECF No. 62-9 at 21–33. The Appellate Division then affirmed the Superior Court's ruling in the Red Bank action, although the breach issue was not raised on appeal. *See* ECF No. 62-10. In both foreclosure actions, courts issued final judgments on the merits. ECF No. 62-5; ECF No. 62-12. The court's determinations of these issues were essential to those judgments; indeed, it was essentially the only issue that the Superior Court considered in its written opinion. And finally, Roggio was a party to the New Jersey court actions. Thus, all the requirements for collateral estoppel are satisfied.

Roggio argues that the New Jersey courts did not have jurisdiction, because FIRREA limits jurisdiction for claims against a failed institution for which the FDIC has been appointed as receiver to certain specific federal courts. Pl.'s Opp. at 4; *see City of Plainfield v. Pub. Serv. Elec. & Gas Co.*, 412 A.2d 759, 765 (N.J. 1980) (requiring the judgment to have been issued by a court "of competent jurisdiction" for issue preclusion to apply) (citation omitted). And to be sure, 12 U.S.C. § 1821(d)(6)(a)(ii) provides that after a claimant exhausts the FDIC administrative process, he may "file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." 12 U.S.C. § 1821(d)(6)(a)(ii). But here, Roggio's counterclaim for breach of the settlement agreement in the Rumson action was filed in August 2008, before WaMu failed in September 2008, and it was thus an action "commenced before the appointment of the receiver" which could continue. ECF No. 62-6 at 25–28; 12 U.S.C. § 1821(d)(6)(a)(ii). And courts have recognized that this provision permits pre-receivership actions to continue and does

not divest the prior court of jurisdiction. *See, e.g.*, *Damiano v. FDIC*, 104 F.3d 328, 333 (11th Cir. 1997) ("[C]ourts in which lawsuits were pending when [the receiver is appointed] remain vested with jurisdiction."); *Holmes Fin. Assocs., Inc. v. Resol. Tr. Corp.*, 33 F.3d 561, 567 (6th Cir. 1994) (state court was not divested of jurisdiction); *Poku v. FDIC*, 752 F. Supp. 2d 23, 29 (D.D.C. 2010) (the District of Maryland retained jurisdiction over a pre-receivership action because "[u]nder FIRREA, courts have recognized that a plaintiff can continue an action commenced before the appointment of the receiver, whether or not the case was originally filed in this Court or in the district within which the depository institution's principal place of business is located") (citation and internal quotation marks omitted). Because Roggio's counterclaim was filed before WaMu failed, his action could continue in the New Jersey state courts, which were not divested of jurisdiction.

Having determined that the requirements of collateral estoppel are satisfied, the Court now turns to whether application of the doctrine would be fair. Estopping a party could be unfair if, for example, that party lacked a full and fair opportunity to litigate the issue in the prior proceeding, he lacked incentive to litigate the issue in the prior proceeding, or new evidence has become available that could likely lead to a different result. *See Barker v. Brinegar*, 788 A.2d 834, 839–40 (N.J. Super. Ct. App. Div. 2002); *Panniel v. Diaz*, 871 A.2d 156, 167 & n.6 (N.J. Super. Ct. Law Div. 2004) (listing exceptions to collateral estoppel). No such unfairness or corresponding exception is present here. Roggio had a full opportunity and incentive to vigorously litigate WaMu's alleged breach in the New Jersey courts, and he did so. Indeed, the parties agreed to stay this action for many years specifically so that the state court litigation could conclude; Roggio cannot now claim surprise at being bound by the outcome of those proceedings. *See, e.g.*, ECF No. 5 (consent motion to stay this action "in light of the parallel

state court action pending in the Superior Court of New Jersey"); ECF No. 25 (consent motion to stay because "[a] parallel state court action continues to proceed in the State of New Jersey"). Roggio argues that estoppel would be unfair because in state court he litigated against WaMu, rather than the FDIC, and additionally that he "agreed to stay this litigation against WaMu—not Chase bank."[5] *See* Pl.'s Opp. at 6–7. But he does not explain why the identity of the defendant would make any practical difference to him; he only reiterates his jurisdictional arguments the Court already rejected. *Id.* at 7–8. And although he asserts that only the FDIC could be liable for his claims against WaMu, even assuming that is true, he does not contend that he would have been unable to execute any judgment obtained in the state court action against WaMu. *See id.*

Roggio also argues that the New Jersey foreclosure proceedings were invalid, and thus that it would be unfair to apply collateral estoppel, because WaMu, and later Chase, did not own his loans, which had been sold to another financial institution. Am. Compl. ¶¶ 17–18; Pl.'s Opp. at 4–6. But even if WaMu did not own the loans, that would not affect whether Roggio had a full and fair opportunity to litigate the issue of whether WaMu breached the settlement agreement. And in any event, the Superior Court's Appellate Division affirmed the trial court's determination that Chase could enforce its loan on the Red Bank property (and thus foreclose on Roggio) because it possessed the loan.[6] ECF No. 62-10 at 16–23.

For these reasons, all the claims over which the Court has jurisdiction are barred by collateral estoppel, and it is not unfair to apply the doctrine here. Thus, the Court will grant the

---

[5] Although the parties briefed the federal law of collateral estoppel, the bodies of law are similar enough so that the parties' arguments also apply to New Jersey law.
[6] Arguments about the Rumson property were not before the Appellate Division. ECF No. 62-10 at 6 n.1.

12

FDIC's motion to dismiss these remaining claims under Rule 12(b)(6), and it need not consider the FDIC's additional arguments for dismissal.

## IV. Conclusion

For all these reasons, Defendant's Motion to Dismiss, ECF No. 62, will be granted. The Court will also deny Roggio's Motion to Certify, ECF No. 86, as moot, and which in any event did not comply with the procedures laid out in the Court's Order of August 17, 2018. A separate Order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: October 25, 2020